BUCKNER, Plaintiff in error, v. STATE, Defendant in error.

*No. State 75. Argued November 1, 1972.—Decided December 7, 1972.*

(Also reported in 202 N. W. 2d 406.)

For the plaintiff in error there were briefs and oral argument by *Charles D. Hoornstra* of Madison.

For the defendant in error the cause was argued by *Richard J. Boyd,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

WILKIE, J. Several issues are raised on this review:

1. Did the trial court err in permitting arresting Officer Ponty to testify that he observed defendant holding a gun on a young couple after the robbery?

2. Did the trial court err in allowing Officer Ponty to testify that defendant exercised his privilege against self-incrimination?

3. Was the sentence in violation of any of defendant's constitutional rights or an abuse of the trial court's discretion?

4. Did the trial court properly deny defendant's motion for a new trial based upon newly discovered evidence?

1. *Testimony concerning the gun-pointing incident.* As his first claim of error at the trial, defendant asserts that the testimony of Officer Ponty, regarding his observation of defendant holding a gun to the neck of a young man in the parking lot, went far beyond that which was designated as permissible by the trial court in chambers. The trial court, with Ponty present, had held that the testimony could include the mention of a gun and the specifics of the arrest. The trial court, however, specifically refused to allow mention of the incident as another robbery. Counsel for defendant objected to any testimony of a weapon appearing to be pointed at the couple, without that couple being present at the trial. Officer Ponty's testimony was:

". . . Mr. Buckner had a—what appeared to be a pistol or revolver in his hand and was holding it to the neck of a young couple, the male party of the young couple."

The trial court overruled counsel's prompt objection to the statement.

Defendant also alleges prejudicial error was committed when one of defendant's accomplices stated during trial that defendant was attempting another robbery just prior to the arrest. Counsel for defendant immediately objected to the statement; the trial court sustained the objection on the ground that it was not responsive to the question. The court then directed the jury to disregard the statement. This instruction was sufficient to cure any prejudicial effect of the statement.[1]

Defendant insists that Officer Ponty's reference to a gun pointing at the couple in the parking lot was prejudicial to defendant because the couple was not present

---

[1] *Harris v. State* (1971), 52 Wis. 2d 703, 705, 706, 191 N. W. 2d 198.

at the trial. Defendant argues that this testimony violated the fundamental fairness requirement of due process and the sixth amendment right to compulsory process because of his inability to rebut such testimony. The relevance of this, argues defendant, is its critical pertinence to his state of mind. The fact that he may have been committing another robbery with another gun incident would certainly, according to defendant, go to the question of defendant's *mens rea* in shooting O'Donahue. Defendant had attempted to show his lack of such intent by his lack of sleep, excessive drinking, marijuana smoking and taking off his glasses.

Defendant cites several cases which, he asserts, are supportive of his argument that Officer Ponty's statement was prejudicial to his attempted showing of a lack of *mens rea*. In *Giles v. Maryland*,[2] the prosecutor actually suppressed evidence which was favorable to the defendant. The case is not in point. Here there was no such suppression of evidence by the prosecutor but simply a decision not to subpoena Miss Boehnen.[3] The case of *Washington v. Texas*,[4] also cited by the defendant, also is not in point. In *Washington* the United Supreme Court overturned a state statute which provided that persons charged as principals could not be introduced as witnesses for each other. There is no such denial of the right to introduce a witness here.

This case is controlled by the very recent case of *Elam v. State*.[5] In *Elam* one of the issues before this court was whether the trial court abused its discretion by denying defendant's motion for a continuance. This court

---

[2] (1967), 386 U. S. 66, 87 Sup. Ct. 793, 17 L. Ed. 2d 737.

[3] By way of affidavit the prosecutor swore, after trial, that he simply had not contemplated using these witnesses until the trial court urged him to do so.

[4] (1967), 388 U. S. 14, 87 Sup. Ct. 1920, 18 L. Ed. 2d 1019.

[5] (1971), 50 Wis. 2d 383, 184 N. W. 2d 176.

noted that both the United States and Wisconsin Constitutions guarantee to a criminally accused the right " 'to have compulsory process.' " [6] This court noted that such right does not require the state to be successful in attempting to subpoena the witness but only that a diligent, good faith attempt be made. The court stated:

"While a state may not by statute, rule, or otherwise deny a defendant the right to compulsory process, it may, as in the case of other constitutional rights, provide reasonable regulations for the exercise and administration of the right. Since the primary responsibility for having witnesses present in court rests with the parties and not the court, the rule is that a motion for a continuance to obtain the attendance of witnesses is addressed to the discretion of the trial court, and the exercise of that discretion will not be disturbed upon appeal or review except where it is clearly shown that there has been an abuse." [7]

Also enumerated in *Elam* were three considerations which a trial court should evaluate in ruling on a motion for a continuance. These considerations are the materiality of the absent witness's testimony, the neglect of the moving party, and the reasonable expectation that the absent witness might be located.[8]

These three considerations apply equally to a trial court's ruling on the admissibility of evidence where there exists the possibility of rebuttal by absent witnesses. The testimony here of the absent witnesses was relevant to the issue of whether defendant held a gun to the young man's neck in the parking lot. After trial one of these witnesses stated under oath that it was not defendant that held the gun but one of his companions. But there was a definite lack of diligence on the part of

[6] *Id.* at page 389. *See also: State v. Moffett* (1970), 46 Wis. 2d 164, 167, 174 N. W. 2d 263.

[7] *Elam v. State, supra,* footnote 5, at pages 389, 390.

[8] *Id.* at page 390.

defense counsel to procure this witness. In his affidavit after the trial he states he was led to believe the state would call Miss Boehnen. The prosecuting attorney, however, flatly denies such representations were made to the defense counsel. Under the circumstances, we do not think counsel for defendant had a right to rely unquestioningly on opposing counsel's purported statement that he would probably subpoena this important witness. The final consideration suggested in *Elam* is whether there is a probability that the witness can be found. It appears that neither counsel actually considered using these witnesses until the trial had begun. With the trial in process the trial court was confronted with the decision to entirely prohibit testimony that was highly relevant to the issue of defendant's state of mind or to allow a much restricted version of what occurred. As the state points out, this court has adopted the American Law Institute Model Code of Evidence rule which requires a trial court to balance the relevance of evidence with its potential prejudice.[9] This balancing was exactly what the instant trial court was faced with. There was no error in the trial court's decision that the relevance of this evidence outweighed the potential prejudice.

Defendant places great weight on the court's and prosecuting attorney's knowledge that the witnesses were beyond the trial court's compulsory process. The implication, of course, is that defendant was duped. It appears these witnesses would have, in all probability, been returned by another state under the Uniform Act to secure the attendance of witnesses from without a state in criminal proceedings.[10] The United States Supreme Court noted in 1968 that this act was, at that time, adopted in 45 states, the District of Columbia, the Canal Zone,

[9] *Whitty v. State* (1967), 34 Wis. 2d 278, 294, 295, 149 N. W. 2d 557.

[10] Sec. 976.02, Stats.

Puerto Rico, and the Virgin Islands.[11] Rather than being duped, we are satisfied that the defendant and his counsel were either negligent or dilatory in seeking the whereabouts of these vital witnesses.

2. *Testimony concerning exercise of defendant's privilege against self-incrimination.* Defendant's second allegation of error involves the trial court's allowance of Officer Ponty's testimony that defendant had, upon being informed of the death of O'Donahue, invoked the fifth amendment. It is the defendant's position that this testimony relating to the issue of defendant's remorse violated the defendant's privilege against self-incrimination. To support his position on this, defendant cites *Helton v. United States* [12] and *United States v. Matos.* [13] In *Matos,* the Seventh Circuit Court of Appeals reversed a federal district court's allowance into evidence of the testimony of a postal inspector that the defendant had indicated he did not desire to make a statement. The appellate court considered it vitally important that there was a complete absence of a curative instruction while this testimony went to the credibility of a defendant in what it considered to be a close case. So also in *Helton,* wherein a police officer testified the defendant refused to explain the presence of marijuana. There, too, the key was a lack of any curative instruction. In the instant case, however, the trial court did give a very complete curative admonition to the jury on the day after the remark was made:

"*The Court:* . . . First I think I should admonish the jury that in the direct examination of Officer Ponty yesterday on rebuttal when he mentioned hearing a conversation between the defendant and other officers there he volunteered the information that Mr. Buckner's con-

---

[11] *Barber v. Page* (1968), 390 U. S. 719, note 4 at 723, 724, 88 Sup. Ct. 1318, 20 L. Ed. 2d 255.

[12] (5th Cir. 1955), 221 Fed. 2d 338.

[13] (7th Cir. 1971), 444 Fed. 2d 1071.

stitutional rights had been explained to him and that he had replied that he understood them but that he didn't want to say anything.

"Now, that was an answer that was immaterial completely to this lawsuit because as I explained to you at the commencement of the lawsuit, the burden of proving the commission of a crime is completely upon the state. The defendant does not have to take the stand, and you are to draw absolutely no inference from that fact in this case, he did take it, and his testimony is to be judged as any other witness as I will explain in my instructions later on.

"The mere fact that at that time he chose to say nothing has completely no bearing on the case, and you should draw no inference whatsoever from that perfectly proper position that he took to remain silent when being questioned late at night by the police. That was immaterial, irrelevant, and you are directed to disregard it completely in your deliberations."

This curative instruction rendered harmless the potentially prejudicial effect of Ponty's statement. This court has very recently held in *Harris v. State* [14] that objectionable remarks of a witness or counsel are not a sufficient basis for reversal if, given the overall evidence of guilt and the effect of curative instructions, no prejudice is shown. Although, in *State v. Tew*, [15] this court noted that a remark about the fifth amendment would be more serious, even such a remark can be salvaged under the *Harris* criteria.

In view of this long and carefully stated instruction to the jury to disregard the officer's remark, it is clear that the trial court did everything it could to preserve the defendant's fifth amendment privilege.

3. *The sentence.* Defendant's third allegation of error is that his sentence was in violation of his right against self-incrimination, of his right to equal protection under

[14] *Supra*, footnote 1.
[15] (1972), 54 Wis. 2d 361, 195 N. W. 2d 615.

the laws, of his privileges and immunities, and was excessive, cruel and inhuman.

Defendant first argues that his sentence violated his fifth amendment right due to the trial court's remarks concerning defendant's exercise of his right to remain silent.

*"The Court: . . .*

". . . he should have cooperated initially and told them who Smith was then, given all the information to the authorities, and then he would be in a position to ask this court for a little mercy.

". . .

*"The Court:* You misconceived my point. My point is I am not talking about making deals and but I am talking about being sorry for what you have done immediately; and I am talking about cooperation on your own in order to get sympathy and mercy. I don't expect anybody not to go through a trial when he has to plead guilty to first-degree murder, which is the only thing you were faced with . . . .

"On the other hand, if you are talking about trying to come clean at the earliest opportunity—that was the only thing I meant. I see your point, that maybe he didn't have a chance to even if he wanted to, but there is testimony in this record, and it probably was erroneous except for the fact that the man took the stand, and that is when they asked if he wanted to say anything, he said, 'I know my constitutional rights, and I want to shut up.'

"Well, that isn't cooperation, but I don't criticize him for that either. . . ."

A defendant cannot receive a harsher sentence solely because he availed himself of one of his constitutional rights.[16] This court has held:

". . . Where the judicial sentencing discretion is exercised on the basis of clearly irrelevant or improper factors, an abuse of discretion also results."[17]

[16] *Baker v. United States* (5th Cir. 1969), 412 Fed. 2d 1069, certiorari denied (1970), 396 U. S. 1018, 90 Sup. Ct. 583, 24 L. Ed. 2d 509.

[17] *McCleary v. State* (1971), 49 Wis. 2d 263, 278, 182 N. W. 2d 512.

It does not automatically follow, however, that an off-hand reference to a consideration indicates the trial court must have utilized it in his sentencing deliberations. The quoted exchange was probably prompted by defense counsel's plea for a minimal concurrent sentence. Nowhere is it indicated "clearly" that the trial court increased defendant's sentence because the defendant exercised his right to remain silent.

In the recent case of *McCleary* this court stated that, on review, it is "obliged to search the record to determine whether in the exercise of proper discretion the sentence imposed can be sustained." [18] In the instant case the trial court presented a clear and rational basis for its sentence. The trial court first noted that under the old felony murder rule this offense would have been an automatic first-degree murder charge. The court properly recognized that defendant was under probation for another conviction in Illinois. The defendant, while probably influenced by others, did, the court noted, pull the trigger which killed an innocent victim. The trial court also considered the deterrence factor to like crimes.

The defendant also argues that his sentencing violated the equal protection and privileges and immunities clauses of the United States Constitution. The offensive statement, according to defendant, is as follows:

"You have to consider in my opinion, and maybe this is bad penal law, but you have to consider the deterrent factor of a sentence. If it has no other effect, it must have that. Here are four boys from Chicago, came in here to have a little fun in Madison. I had a first-degree murder last November where a couple of fellows came from Milwaukee to have a little fun in Madison, and an innocent victim was murdered. Well, I think it's about time that the word got around that this cannot happen in Madison, Wisconsin. I went through five and one-half years as district attorney, and I tried one first-degree murder case. I was a judge for thirteen years, I had one first-degree murder case; and in six

---

[18] *Id.* at page 282.

months I have had three first-degree murder cases and a second-degree murder case."

Although defendant asserts violations of his constitutional rights, he cites no authority and attempts no showing that the trial court relied, in its determination of the proper sentence, upon the fact that defendant was from Chicago. We are satisfied from the quoted portion of the record that the trial court was making a general protestation against the rise in callousness for human life. In light of the other considerations relied upon by the trial court no abuse of discretion appears here.

Furthermore, it is not inappropriate for a trial court, in sentencing, to consider the general factor that individuals alleged to have committed a particular crime may have felt themselves better able to avoid detection because they were unknown in the community. The trial court here properly considered this point in assessing the deterrent factor of its sentence. The record does not sustain the charge that the trial court imposed its sentence on this particular defendant because he was from a particular place—Chicago.

Defendant argues his sentence on the second-degree murder offense was excessive, cruel and inhuman and widely disparate from that (eighteen years on a different charge—third-degree murder) received by the ring leader, Smith. The *McCleary* rule governs this aspect of sentencing also. No abuse of discretion is apparent from the record.[19] The gravity of this particular offense, committed in the course of commiting another crime, sufficiently supports the sentence. That defendant received a greater sentence (on a more serious charge) than did Smith, the leader, is not a relevant consideration as it does "not relate to the merits of the conviction." [20]

[19] *Id. See also: State v. Tuttle* (1963), 21 Wis. 2d 147, 124 N. W. 2d 9, and *Riley v. State* (1970), 47 Wis. 2d 801, 177 N. W. 2d 838.

[20] *See Jung v. State* (1966), 32 Wis. 2d 541, 545, 145 N. W. 2d 684.

4. *New trial for newly discovered evidence.* Defendant's final assertion of trial court error relates to his amended motion for a new trial based on newly discovered evidence. The trial court denied the motion (made over a year after judgment) on June 16, 1972, on the basis of a lack of jurisdiction and defendant's negligence in finding the absent witnesses.

On the issue of jurisdiction, the trial court correctly determined it was without jurisdiction to rule on defendant's motion. The statute provides:

"**New trial.** (1) A defendant may move in writing or with the consent of the state on the record to set aside a judgment of conviction and for a new trial in the interest of justice, or because of error in the trial or because of error in the jury instructions, or because the judgment of conviction is not supported by the evidence or is contrary to law; but such motion must be made, heard and decided within 90 days after the judgment of conviction is entered, unless the court by order made before its expiration extends such time for cause. Such motion, if not decided within the time allowed therefor, shall be deemed overruled. . . ." [21]

Under this statute, defendant's motion, made over a year after trial, clearly could not be considered by the trial court.

The grounds for granting a new trial were recently stated again in *State v. Chabonian:* [22]

" '. . . (1) The new evidence was not discovered until after trial; (2) the party moving for a new trial must not have been negligent in seeking to discover such new evidence; (3) the new evidence must be material to the issue; (4) the new evidence must not be merely cumulative to testimony introduced at the trial; and (5) the new evidence must be such that it will be reasonably probable that a different result would be reached on a

[21] Sec. 974.02, Stats.
[22] (1971), 50 Wis. 2d 574, 583, 185 N. W. 2d 289; *see also: Simos v. State* (1972), 53 Wis. 2d 493, 498, 499, 192 N. W. 2d 877.

new trial. . . .' The fifth requirement is a requirement for the granting of a new trial in the interest of justice."

The trial counsel for defendant, in his affidavit, stated that he did not attempt to reach the absent witnesses because he was led to believe the state would call such witnesses. The prosecution attorney, also by affidavit, denied he made any representations to opposing counsel. The trial court could reasonably conclude that there was a lack of diligence in procuring these witnesses,[23] and hence the request for a new trial failed for not meeting the second requirement:

" '. . . (2) the party moving for a new trial must not have been negligent in seeking to discover such new evidence; . . .' "

The fifth requirement of a probably different result must also be met in order for a trial court to grant a new trial. Here the trial court was satisfied that defendant's newly discovered evidence would not prompt a different result. There was no abuse of discretion here, for, as the state points out, this requirement calls for a "probability" rather than a mere "possibility" of a different result.[24]

*By the Court.*—Judgment of conviction and order denying the amended motion for a new trial affirmed.

[23] *See Greer v. State* (1968), 40 Wis. 2d 72, 161 N. W. 2d 255, certiorari denied (1969), 393 U. S. 1122, 89 Sup. Ct. 1002, 22 L. Ed. 2d 127.

[24] *State v. Chabonian, supra,* footnote 22, at page 583.