STATE, Respondent, v. JOHNSON, Appellant.

*No. State 82. Argued September 4, 1973.—Decided October 2, 1973.*
(Also reported in 210 N. W. 2d 735.)

336

For the appellant there was a brief by *Francis R. Croak*, attorney, and *Robert L. Elliott* of counsel, both of Milwaukee, and oral argument by *Mr. Croak*.

For the respondent the cause was argued by *Thomas J. Balistreri*, assistant attorney general, with whom on the brief was *Robert W. Warren*, attorney general.

WILKIE, J. Three issues are presented on this appeal:

1. Were the statements made to other witnesses by appellant's brother, Harold, as to his intention to rob the Hopkins Savings & Loan Association and his later statement that everything went as planned properly excluded?

2. Were the references to appellant's failure to make a statement after his arrest prejudicial error and grounds for a mistrial?

3. Was the statement made by the prosecutor, during closing argument, that a police officer told him during the trial that the defendant was lying, prejudicial error, and grounds for granting defendant's motion for mistrial?

*Hearsay statements of Harold Johnson.*

Julia Johnson testified that on February 4th at about 1:30 or 2 p. m. two men (neither of whom was Stanley Johnson) came to visit her husband, Harold. She was asked what she overheard her husband say to these men. This was objected to as hearsay. Defense counsel made an offer of proof and claimed that the statements were admissible as declarations against penal interest. The offer of proof showed that Mrs. Johnson would testify that her husband said " 'Yes, I'm going to rob the Hopkins Savings and Loan,' " and " 'Hank, you going to

carry the gun.' " Then she heard another voice say " 'No, not me.' " Then again she heard her husband say, " 'I carry the gun—I'm not scared to rob no damn hunky.' "

The court sustained the hearsay objection subject to any memoranda the prosecutor or defense counsel might wish to submit.

Another offer of proof was made concerning testimony of appellant's sister, Sarah Crumble. She would have testified that Harold came to her home to borrow money on Febuary 2, 1970, and told her that " 'Me and these dudes going to pull a job and if everything goes right I give your money back in a day or so.' " She then drove him to a hair salon to have his hair straightened. (Cleary had testified that the robber had straight hair.) She then would have testified that Harold returned on February 4, 1970, at about 10 p. m. and returned her money. He asked her if she had heard anything about a loan company robbery. She asked why and he replied " 'Don't worry about that.' " While in her car he said that everything went easier than he thought it would and she warned him to be careful or he would get killed. The court again excluded this evidence. The only testimony she was allowed to give before the jury concerned the borrowing and repayment of the money by Harold.

It is clear that both declarations against penal interest and statements of intent to do a future act as proof of the act are admissible under the new Wisconsin Rules of Evidence,[1] as exceptions to the hearsay rule. These rules are effective January 1, 1974, and apply to actions then pending or commenced thereafter. Therefore, the precise question here is whether either of these exceptions was recognized in Wisconsin before the adoption of the new Wisconsin Rules of Evidence.

As to declarations against penal interest, the state is correct in its position that the former rule in Wisconsin

---

[1] *See* sec. 908.03 (3) and sec. 908.045 (4), *Wisconsin Rules of Evidence.*

has been limited to declarations against pecuniary or proprietary interest. *Truelsch v. Miller* [2] does not approve the admission of declarations against penal interest. *Truelsch* involved the admission of letters written by a man before he committed suicide that he had borrowed money from his employer intending to pay it back and that some of it had been used to pay the premiums on life insurance policies. He indicated that the proceeds of the policies should be applied to make good the debt. Even under the new rules the declarations in this case might not meet the requirement of corroboration.

The rule of *Truelsch* was not expanded by *Meyer*.[3] *Meyer* involved a personal injury suit arising from an automobile accident in which a statement taken down by a defendant's insurer was offered by the defendant himself. Although part of the statement did contain a remark which arguably could be considered against interest, the majority of the statement was self-serving. The court quoted *Truelsch* as indicating that declarations against pecuniary or proprietary interest were admissible because they demonstrate a lack of motive to falsify. However, the court refused to say that this inherent credibility extended to all other statements made contemporaneously, or contained in the same written document, with an admissible declaration against interest. The same standard of no-motive-to-falsify must be met by all parts of a statement so offered. In approving Rule 509 (2) of the *Model Code of Evidence*,[4] the court in *Meyer*

---

[2] (1925), 186 Wis. 239, 202 N. W. 352.

[3] *Meyer v. Mutual Service Casualty Ins. Co.* (1961), 13 Wis. 2d 156, 108 N. W. 2d 278.

[4] *Id.* at pages 164, 165. ALI *Model Code of Evidence*, Rule 509, p. 255:

"Declarations Against Interest. (1) A declaration is against the interest of a declarant if the judge finds that the fact asserted in the declaration was at the time of the declaration so far con-

neither mentioned nor in any sense approved sub. (1) as appellant contends here.

Our conclusion, therefore, is that the hearsay statements of Julia Johnson and Sarah Crumble are inadmissible since the hearsay exception does not apply prior to January 1, 1974, to declarations against penal interest.

As to the statements showing present intent by Harold, we conclude that the statements were erroneously excluded. In *Lager v. ILHR Department* [5] we approved the admission of declarations of intent as proof that the intent was carried out. Although this was a civil case there is no mention that a different rule should be generally applied in criminal cases. True, in the earlier case of *Buel v. State* [6] it was held that threats by third persons to commit the act with which the accused was charged were not admissible as evidence that the act was committed by the third persons and not the accused. Given the fact that no mention was made in *Lager* of a different and more restrictive rule in criminal cases, *Buel* has been sub silentio overruled.

Although it was error to exclude the testimony of Harold Johnson's widow, the exclusion was harmless error. A verdict will not be set aside because of the ex-

trary to the declarant's pecuniary or proprietary interest or so far subjected him to civil or criminal liability or so far rendered invalid a claim by him against another or created such a risk of making him an object of hatred, ridicule or social disapproval in the community that a reasonable man in his position would not have made the declaration unless he believed it to be true.

"(2) Subject to Rule 505, evidence of so much of a hearsay declaration is admissible as consists of a declaration against interest and such additional parts thereof, including matter incorporated by reference, as the judge finds to be so closely connected with the declaration against interest as to be equally trustworthy."

[5] (1971), 50 Wis. 2d 651, 660, 185 N. W. 2d 300.

[6] (1899), 104 Wis. 132, 149, 80 N. W. 78.

clusion of evidence unless it would probably have a substantial influence in bringing about a different verdict.[7] With the unshaken identification by an eyewitness and the fact that even if believed by the jury the evidence would not eliminate the defendant as one of the possible robbers, the offered testimony would not meet this standard.

### *Testimony of Detective Thomas Perlewitz.*

In rebuttal the prosecutor called Detective Thomas Perlewitz. Perlewitz testified that after advising Stanley Johnson of his rights, "I also asked him if he understood what I told him and he said he did, and he did not wish to make any statement." Defense counsel then asked to be heard in the absence of the jury and moved for a mistrial. The motion was denied and when the jury was recalled the first question the prosecutor asked was:

"Officer Perlewitz, after Mr. Johnson indicated that he didn't want to talk to you anymore about the Hopkins Savings & Loan holdup, did you continue to interrogate him?"

Defense counsel did not object and Detective Perlewitz testified that Johnson had struck up a conversation in which he said that he knew there was a robbery warrant out for him and that he knew his brother's funeral was "staked out" and that he had managed to outsmart the police by attending the funeral disguised as a woman. Again the prosecutor asked Perlewitz:

"Did Mr. Johnson make any statements to you on the aircraft coming back from San Francisco concerning— directly concerning the robbery at the Hopkins Savings & Loan on the 4th of February, 1970?"

---

[7] *Green Bay-Wausau Lines, Inc. v. Mangel* (1950), 257 Wis. 92, 98, 42 N. W. 2d 493.

This was objected to by defense counsel "for the same reason as I previously exposed on the record." The court replied:

"Yes. He is not required to make any statements. He has a constitutional privilege not to, and we won't go into it any further. As a matter of fact, if counsel for either side want any instructions concerning the inadvertent interpolation of that in the presence of the jury, I will be glad to give it.

"Objection sustained to the question. He didn't have to make any statements and there should be no inference against him because he did not. It is his constitutional right. The only reason for this inquiry is with regard to another matter, and has nothing to do with any statements concerning the alleged offense itself.

"So the jury is not to get any inference against him because of what has been so far testified to concerning the advice given to him as to his constitutional rights, and his indication that he didn't want to respond concerning any inquiries about that particular matter that is referred to in the charge here. He is not required to do so, and the jury will exclude that from their consideration."

There is some question about defense counsel's raising adequate objection to the three offensive statements. Although the third instance of Detective Perlewitz' testimony concerning Stanley Johnson's failure to make a statement was objected to, the second instance was not objected to, and the defense counsel moved for a mistrial after the first remark. In any event, in the absence of a strategic waiver (which was not present here) a trial court objection is not necessary to preserve the right to raise constitutional errors on appeal.[8] This alleged error has constitutional dimensions—a reference to the exer-

[8] *Holloway v. State* (1966), 32 Wis. 2d 559, 568, 146 N. W. 2d 441; *State v. McDonald* (1971), 50 Wis. 2d 534, 537, 538, 184 N. W. 2d 886; *State v. Morales* (1971), 51 Wis. 2d 650, 654, 187 N. W. 2d 841.

cise of a constitutional right to remain silent. The actual instruction given by the trial court did cover all three remarks and it is immaterial whether precise objections were made to the first two remarks since the instruction given actually covered all three remarks anyway.

Even constitutional errors, however, are subject to the harmless-error rule.[9] In *Buckner v. State* [10] this court considered the precise question of whether, when a police officer testified that a defendant had told him that he understood his rights but did not want to say anything, the allowance of this testimony into evidence operated to the defendant's prejudice. There the trial court gave a thorough curative instruction, as here, but not until the day after the remark. It was there held that the curative instruction "rendered harmless" the potentially prejudicial effect of the officer's testimony. So here the completely curative instruction of the trial court, given immediately after the last objectionable remark, rendered harmless the potentially prejudicial effect of Detective Perlewitz' testimony as to Johnson's statement that he did not want to say anything.

### Closing arguments of prosecutor.

During the course of the closing argument, the prosecutor made the following statement: " 'And Tom Perlewitz tapped me on the shoulder and said "he's lying." ' " The argument was not recorded but the reporter indicated that the statement occurred when reference was made to defendant's testimony that while on the airplane he had not told Officer Perlewitz he had been back to Milwaukee. This was apparently when the prosecutor was urging the jury to disregard the defendant's testi-

---

[9] *Pulaski v. State* (1964), 24 Wis. 2d 450, 129 N. W. 2d 204.
[10] (1972), 56 Wis. 2d 539, 548, 549, 202 N. W. 2d 406.

mony in his own behalf and after alluding to the *falsus in uno* instruction.

Defense counsel immediately objected and the court said:

"The objection is sustained and the jury is instructed to disregard that statement completely, the same as though it had not been said. The district attorney is not a witness, he is not testifying, and you are to disregard any statement made by Mr. Klinkowitz—it's improper."

The defendant's motion for a mistrial based on this remark and on the earlier references to Johnson not making a statement to the police was denied. The court stated:

"A mistrial is reserved for the gravest of occurrence that would interfere with a fair continuance of the trial, and I do not think that would apply to the incident referred to—although I do agree that the latter situation should not have occurred and I deplore that it did occur. The prosecutor should have known better than to relate to the jury what transpired during the progress of the trial so far as any conversation he had with a witness is concerned. And I think with that, the record is sufficiently clear of any prejudicial error, so that the motion for mistrial should be denied. It stands denied, and I have stated the reason. I do not consider it of such gravity as to affect the outcome of the trial, so far as the jury verdict is concerned. I think the record is clear as to your motion for mistrial, both of them."

The issue of improper remarks by counsel in closing arguments comes up frequently. The state concedes that the remark by the district attorney was error. Thus the question again is whether the remark can be considered reversible error. "Generally, whether remarks of witnesses or an attorney have such a prejudicial effect that a new trial should be granted is a question of fact." [11] Where the remark is of such a nature that it does not go

---

[11] *Harris v. State* (1971), 52 Wis. 2d 703, 705, 191 N. W. 2d 198.

to the issue of guilt, as a confession by the accused does, it should be considered in the context of the other facts of the case.[12] The standard of review is whether the trial court abused its discretion in denying a motion for mistrial because of claimed prejudicial argument to the jury.[13]

It is clear in the record that since the police officer contradicted the defendant's version of the testimony, the remark "he's lying" added little. It is not a claim of perjury against an uncontradicted witness. In view of the trial court's admonition to the jury and the weight of the evidence against the defendant, we conclude that this particular remark, under the circumstances of the case, is not so prejudicial that the trial court abused its discretion in not granting a mistrial.

*By the Court.*—Judgment and order affirmed.

---

[12] *Id.*

[13] *State v. Richardson* (1969), 44 Wis. 2d 75, 82, 83, 170 N. W. 2d 775; *Taylor v. State* (1971), 52 Wis. 2d 453, 460, 190 N. W. 2d 208.