RUDOLPH, Plaintiff in error, v. STATE, Defendant in error.

*No. State 234 (1974).* —*Decided June 14, 1977.*
(Also reported in 254 N.W.2d 471.)

436

For plaintiff in error: *Howard B. Eisenberg,* state public defender, and *Garrett N. Kavanagh,* assistant public defender.

For defendant in error: *Bronson C. La Follette,* attorney general, and *Wm. L. Gansner,* assistant attorney general.

## PER CURIAM

On March 2, 1976, this court in an unpublished per curiam opinion, affirmed the judgment and order of the circuit court for Marinette county, the Hon. James A. Martineau, Circuit Judge presiding, which, following a jury trial, had adjudged the plaintiff in error, Michael L. Rudolph (hereinafter defendant), guilty of the crimes of burglary and arson. On May 4, 1976, this court denied the defendant's motion for a rehearing.

Thereafter, the defendant petitioned the United States Supreme Court for a writ of certiorari to review this court's judgment. By order dated January 10, 1977, the Supreme Court granted the defendant's petition, summarily vacated this court's judgment, and remanded the case to this court for ". . . further consideration in light of *Doyle v. Ohio,* 426 U.S. 610 (1976) [96 S. Ct. 2240]."

Upon receiving the remand from the United States Supreme Court, this court on January 19, 1977, issued an order setting up briefing schedules for the parties.

The Attorney General, on behalf of the state, has now filed a petition, accompanied by a supporting memorandum, for permission to confess error. The State Public Defender, on behalf of the defendant, concurs in the state's request for permission to confess error and in addition has filed a brief on the merits.

The state's petition to confess error in this case is based on its conclusion that the introduction of testimony during the prosecution's case in chief regarding the defendant's silence during a post-arrest custodial interrogation, was nonharmless constitutional error requiring the reversal of the defendant's convictions. Because we conclude under the circumstances of this case that the error was rendered harmless by the trial court's prompt, cautionary and explanatory statement to the jury, we reject the state's confession of error. Accordingly, we reaffirm the defendant's judgment of convictions and sentence.

The facts involved in this case were set forth in our original per curiam opinion and need not be repeated in detail at this time. The charges against the defendant stem from a burglary and arson of St. Joseph's Catholic Church in the city of Marinette on June 30, 1973. The defendant and his brother were arrested on July 4, 1973, and subsequently charged with these offenses. The defendant's brother plead guilty to the charges. The defendant was convicted after a jury trial. The evidence presented against the defendant was entirely circumstantial in nature. The defendant did not testify in his own behalf nor call any witnesses other than the clerk of courts to establish that the defendant's brother had previously plead guilty to the offenses.

During the prosecution's presentation of its case in chief, a police officer, who had attempted to question the defendant two days after his arrest, was asked the following questions and gave the following answers in his direct examination:

"Q. Now, Lieutenant Gauthier, did you ever interrogate or talk to the defendant in connection with this fire?

"A. I attempted to on July 6, 1973, along with Chief Deputy Robert Kohlmann and someone else in the room.

"Q. Will you tell us what transpired at that time?

"A. *Nothing. He didn't want to talk to me.*

"Q. Did you attempt to talk to him on any other occasion?

"A. No, sir.

"MR. DONOVAN: [Defense Attorney] I object to the offering of the evidence of the fact that the individual was standing on his constitutional rights and didn't want to testify. (sic)

"THE COURT: Oh, I think the jury is entitled to the explanation, the defendant is under no obligation to talk with the officer at all. The defendant was perfectly within his rights in refusing to talk to the officer."[1] (emphasis supplied)

[1] Earlier during this officer's testimony he had described his effort to contact the defendant and his brother for questioning the day after the fire. The officer testified he had asked the defendant's mother to have the defendant and his brother contact him but they never did. Defense counsel's objection to this testimony as being an attempt ". . . to use this as an indication of guilt . . .", was overruled. On the original appeal in this case we rejected the defendant's claim that this was error, and discounted the relevance of this testimony in the absence of any evidence that the mother actually communicated the officer's request to her sons.

Later in the direct testimony of one of the arresting officers, evidence was presented that the defendant's brother, at the time of their arrests, refused to say anything to the officer but rather kept rolling up the window of the van he and his brother were in. This testimony prompted the following colloquy between defense counsel and the court:

"MR. DONOVAN: Your Honor, I think perhaps at this point I would like to object to the suggestion that there is an implication of guilt in these actions.

"THE COURT: There is an implication of what?

"MR. DONOVAN: Of William Rudolph is implicating Michael by not going down and being questioned.

"THE COURT: We have gone through this before, of course. Again, I want to say for the record, a man has a right to refuse

This exchange was subsequently cited on appeal by the defendant as error. In rejecting this claim, we stated in our per curiam opinion of March 2, 1976:

". . . It is claimed that the trial court erred in failing to give a sufficient cautionary instruction after the prosecution brought out that the plaintiff in error had exercised his privilege against self-incrimination . . . With respect to the first issue, the trial court explained to the jury that the defendant was under no obligation to talk with the police officer and was within his rights in so refusing. We hold this is a sufficient cautionary instruction."

In compliance with the United States Supreme Court's directive to this court to further consider this case in light of *Doyle v. Ohio*, 426 U.S. 610, 96 S. Ct. 2240, 49 L. Ed.2d 91 (1976), we have done so. However, we do not view this case as being within the *Doyle* rationale. In *Doyle* the court reversed the narcotics convictions of two individuals because the prosecutor cross-examined them about their failure to give to the police the exculpatory statements they made during the trial.

The prosecution contended that the two had sold ten pounds of marijuana to a police informant. They were given the *Miranda* warnings at the time of their arrests and remained silent during police questioning. At their trials, they contended that the informant had framed them. The prosecutor, over objection, asked each of them why they had not spoken of the frame-up to the police when the two were arrested. The convictions were affirmed by the Ohio appellate court.

The United States Supreme Court reversed and remanded, stating that in view of the *Miranda* warnings, "every post-arrest silence is insolubly ambiguous because of what the state is required to advise the person ar-

to talk to a police officer if he wishes. We have been through this before and I have overruled the objection and the objection is overruled."

rested." The *Miranda* warnings contain an implicit assurance that silence will carry no penalty, the court went on, and ". . . it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial." *Id.*, 49 L. Ed.2d at p. 98.

The issue involved in *Doyle* was whether the state could impeach a defendant's exculpatory story, told for the first time at trial, by cross-examining the defendant about his failure to have told the story after receiving the *Miranda* warnings at the time of his arrest. That is not the issue involved in the instant case. Here the defendant did not testify nor did he present inconsistent statements to the police. He did not present a defense which was inconsistent with his pre-trial, post-arrest silence. Indeed, his defense—or more precisely, nondefense—was simply to stand on his presumption of innocence and to make the state meet its burden of proof. The *Doyle* due process rationale is simply not applicable to this case. In fact, there is no testimony in this record that the defendant was ever given the *Miranda* warnings.

Rather, this case presents the more fundamental question of whether the prosecution may affirmatively use in its case in chief the fact that the defendant stood mute or claimed the privilege against self-incrimination in the face of accusations during custodial interrogation. That the prosecution may not so use such silence has been clear since the court in *Miranda* stated:

"In accord with our decision today, it is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation. The prosecution may not, therefore, use at trial the fact that he stood mute or claimed his privilege in the face of accusation." *Miranda v. Arizona*, 384 U.S. 436, 468, note 37, 86 S. Ct. 1602, 16 L. Ed.2d 694 (1966).

Such proscription has been recognized in this state. See, e.g., *State v. Johnson,* 60 Wis.2d 334, 342, 344, 210 N.W. 2d 735 (1973); *Buckner v. State,* 56 Wis.2d 539, 548, 549, 202 N.W.2d 406 (1972); and *Reichhoff v. State,* 76 Wis.2d 375, 379, 380, 251 N.W.2d 470 (1977).

Under the circumstances of the instant case, we have no doubt that it was error to present testimony of the defendant's election to remain silent at the time of his post-arrest custodial interrogation. This error is not based on the due process considerations of *Doyle,* but rather on the guarantee against self-incrimination contained in the Fifth Amendment, as incorporated in the Fourteenth, which proscribes the prosecution's use of the defendant's silence in its case in chief. *See Griffin v. California,* 380 U.S. 609, 14 L. Ed.2d 106, 85 S. Ct. 1229 (1965).

Implicit in our original opinion in this case was the conclusion that such error had occurred. If error had not intervened, there would have been no reason to consider the effect of the cautionary explanation given to the jury by the trial court.

As we view the case, the state is now attempting to confess this court's alleged error in concluding in our original per curiam opinion that the cautionary instruction given by the trial court in this case was sufficient to cure the prejudice flowing from the jury improperly being informed that the defendant refused to talk to the police after his arrest. This case turns not on the question of whether error has occurred—because it has—but rather on the question of whether in light of the entire case, including the cautionary instruction given by the trial court, the error was harmless. Despite the state's position, we reaffirm our earlier conclusion that the error was cured by the instruction and under the circum-

stances of this case rendered harmless beyond a reasonable doubt. The recent case of *Reichhoff v. State, supra,* is instructive for the conceptual framework it provides for harmless error analysis. The test of whether constitutional error is harmless, as that test was formulated in *Chapman v. California,* 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed.2d 705 (1967), and as it was applied in *Reichhoff,* requires that the beneficiary of the constitutional error, here the state, ". . . prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." 386 U.S., at 24. As recognized in *Reichhoff,* the relevant factors considered when determining whether a constitutional error is harmless include (1) the frequency of the error, (2) the nature of the state's evidence against the defendant, and (3) the nature of the defense. According to the state in its memorandum of authorities in support of its petition for confession of error, the second factor—the nature of the state's evidence against the defendant—mandates under the circumstances of the instant case that the error complained of was not harmless. The state in its memorandum of authorities concludes that the evidence was barely sufficient to convict in this "very close case." The state argues that because the properly admitted evidence of the defendant's guilt was very weak, the likelihood of prejudice from the error in this case increased rendering the error here nonharmless.

We previously found the evidence in this case to be sufficient to sustain the conviction. Contrary to the state's now stated position, we do not view this case as a close case with only barely sufficient evidence. As stated in our original opinion, the evidence presented to the jury upon which the conviction could be sustained included the fact that the tennis shoes the defendant was wearing at the time of his arrest matched shoe prints found on the safe in the church. Also, wax droppings

found on the defendant's shoes matched the wax droppings found on the safe and in the church and consisted of 51% beeswax as did the candles used in the church. There were also soot particles taken from the wax from the defendant's shoes and from the wax at the scene of the fire. Of lesser probative value but also appropriate for the jury to consider was the fact that the defendant lived ten blocks from the church and that the safe which had been moved from its position in the church by the burglars weighed 111 pounds. From this latter fact, the jury could reasonably infer that the defendant's brother was not alone when he burglarized and burned the church.

The evidence in this case was entirely circumstantial, but as this court has recognized, it is well-established that a finding of guilt may rest upon such evidence. Indeed, although each element of the crime must be proven beyond a reasonable doubt, each element may be proven beyond a reasonable doubt by circumstantial evidence alone. *Bethards v. State,* 45 Wis.2d 606, 612, 173 N.W.2d 634 (1970). See also *Bautista v. State,* 53 Wis.2d 218, 223, 191 N.W.2d 725 (1971). The evidence amassed by the prosecution in this case, while circumstantial, was amply sufficient to support the conviction.

Even assuming the evidence in this case was less than overwhelming, that is but one factor to be considered in determining whether the constitutional error complained of was harmless. In *State v. Spring,* 48 Wis.2d 333, 179 N.W.2d 841 (1970), this court stated at p. 340:

"Consequently in analyzing this problem [whether constitutional error was harmless] we must consider the character of the remarks in the context in which they were made, the admonition by the court to the jury to disregard such remarks and its probable effect, the strength of the evidence on the issue of guilt and all other

facts which may be relevant in determining what effect the improper remarks had upon the jury."

In *Reichhoff, supra,* the error, similar to the type asserted in the instant case, was found to be not harmless by this court. *Reichhoff* is not controlling because there the prosecutor's reference to the defendant's silence was repeated and more blatant. Moreover, no cautionary instruction at all was given by the trial court in *Reichhoff*.

Here, although the trial court did not specifically sustain the defense counsel's objection, nevertheless, a cautionary explanation that the defendant was under no obligation to talk to the police and was within his rights in refusing to talk to the officer, was given by the trial court to the jury. The question is whether that explanation cured the error. The state now concedes that this comment by the trial court was insufficient to render the error in the admission of one testimony regarding the defendant's silence nonprejudicial because the comment contained no admonition to the jury, either at the time it was made or during final instructions to disregard such testimony and draw no inference from it. According to the state, the most that can be fairly said of the trial court's comment is that it gave the jury one possible explanation for the defendant's silence during his custodial interrogation, viz., a proper invocation of his constitutional rights, but that explanation did not foreclose the jury from inferring that the defendant's reliance upon his rights was evidence of his desire to conceal his guilt. The state's position is that the trial court should have instructed the jury that no negative inferences regarding the defendant's guilt could be drawn from the testimony of his silence.

In previous cases where the claim was made that error had occurred when the jury was informed of the accused's refusal to make a statement to the police, this court has, on at least two occasions, affirmed the con-

victions finding that the curative instructions given by the trial courts were sufficient to eliminate any prejudice. See, e.g., *Buckner v. State, supra,* and *State v. Johnson, supra.* In both those cases, the curative instruction given by the trial courts included the specific instruction that the jury was not to draw any inference from the fact that the defendant remained silent when being questioned by the police. As noted, no such specific instruction was included in the cautionary statements made by the trial court in this case. However, no such specific instruction was requested by the defendant's trial counsel. In *State v. Cassel,* 48 Wis.2d 619, 180 N.W.2d 607 (1970), this court at p. 625–626 stated:

". . . Normally it is not error for a court to fail to give an instruction which is not requested. This court has ruled that a trial court should not be required *sua sponte* to undertake admonitory instructions. *State v. Yancey* (1966), 32 Wis.2d 104, 112, 145 N.W.2d 145 (failure to instruct a jury when an accused pleads the Fifth Amendment while on the witness stand) ; *Johns v. State* (1961), 14 Wis.2d 119, 109 N.W.2d 490 (the failure to instruct that no presumption arises from failure of accused to take the witness stand on his own behalf). This rationale is based upon the theory that such instructions may do more harm than good and therefore defense counsel should be given the opportunity and responsibility to determine his own trial technique, and whether or not he wants an instruction given in such a situation. This rationale was reiterated and affirmed in *Price v. State* (1967), 37 Wis.2d 117, 130, 154 N.W.2d 222."

See also *Watson v. State,* 64 Wis.2d 264, 278, 279, 219 N.W.2d 398 (1974) and cases cited therein.

In addition to not requesting any specific admonitory instruction, the defendant's trial counsel in motions after verdict filed on the defendant's behalf, did not

raise the constitutional error now asserted by the defendant's appellate counsel. It wasn't until the appointed State Public Defender had the opportunity to review the record that such error was raised and presented in motions after verdict to the trial court. The fact that the defendant's trial counsel did not request any additional instructions or specifically base his motion for a new trial on the error now asserted is an indication that at the time of trial this error was viewed as being far less egregious than now. While we recognize the issue involved here is one of constitutional dimensions so that the usual waiver rules are not applicable, see *State v. Johnson, supra,* at p. 343, we merely point out these deficiencies in the record as being indicative of the fact that trial counsel was apparently satisfied with the trial court's action.

We deem it to be the duty and responsibility of this court to carefully examine the record before setting aside a conviction, even where error has been confessed, see 24 C.J.S. Criminal Law, sec. 1948(3), p. 367. We conclude the state's confession of error should be rejected because the error was harmless beyond reasonable doubt.

The judgment and order are affirmed.

ROLAND B. DAY, J. (dissenting). In my opinion the constitutional error of admitting at trial evidence of defendant's silence during custodial interrogation was prejudicial. Applying the *Reichhoff* test, 76 Wis.2d at 381, we focus on several factors: frequency of the error, the nature of the state's evidence against the defendant, and the nature of the defense.

It is true that the prosecutor here elicited testimonial reference to defendant's post-custodial silence on only one occasion, and there was apparently no comment upon that evidence during his closing argument. This

may not be, however, "a case where the prosecution asked one witness, on one occasion, whether the defendant professed innocence at the time of arrest." *Reichhoff*, 76 Wis. at 381. The prosecutor's eliciting of testimony a moment earlier, from the same witness, relating to defendant's pre-arrest failure to contact the police when they merely wished to discuss the crime with him, may have been designed initially to cast the defendant before the jury as a person with something to hide. The subsequent testimony relating to his refusal to answer questions after arrest very likely detracted further from any presumed noninvolvement in the offense charged.

As in *Reichhoff*, evidence against this defendant was circumstantial, and was also sufficient to support his conviction, as this Court expressly held in its earlier review of this case. Unlike *Reichhoff*, however, where the circumstantial evidence of guilt was strong, 76 Wis. 2d at 383–384 (HANLEY, J. dissenting), the circumstantial evidence here was thin—as the trial court below noted on two occasions.[1]

The defendant here did not testify and, indeed, presented no evidence other than certification of his brother's plea of guilty to the identical charges. Unlike *Reichhoff*, therefore, this trial was not a credibility contest.

---

[1] When denying defendant's motion for dismissal at the close of the state's case, the court stated:

"Well, I will agree this is a very close case. This is a touch and go deal, and yet I am going to let this case go to the jury."

Later, in denying defendant's post-verdict motion for new trial, the court said:

"Well, I say now as I said at that time, that this is, it was a thin one, no doubt about that, but it is the old story of what probative value circumstantial evidence has. This man was not seen in the church, he was not apprehended in the church. And that many, many crimes are disposed of on that basis, conviction based upon the state's case based entirely upon circumstantial evidence, and that was true here."

However, because of the nature of the evidence of guilt, the erroneously admitted evidence obtains a special importance. As the United States Supreme Court has stated, it is likely that a jury will draw a "strong negative inference . . . from the fact that the defendant remained silent at the time of his arrest." *United States v. Hale,* 422 U.S. 171, 180 (1975). Such evidence has a "significant potential for prejudice," precisely because a jury may view it as a "badge of guilt." *Walker v. United States,* 404 F.2d 900, 903 (5th Cir. 1968) ; *accord, Commonwealth v. Haideman,* 449 Pa. 367, 296 A.2d 765, 767 (1972). Because the properly admitted evidence of defendant's guilt was weak, the likelihood of prejudice from the error in this case may very well assume the status of certainty. At the very least, "there is a reasonable possibility that the improperly admitted evidence contributed to (defendant's) conviction." *Schneble v. Florida,* 405 U.S. 427, 432 (1972). That inescapable conclusion renders the error here prejudicial.

The comment made by the trial court to the jury immediately after the error in this case was not sufficient to render the error harmless. The trial court did not sustain defendant's objection to the improper testimony. There was no admonition to the jury, either at that time or during final instructions, that it should disregard the testimony. Instead, the trial court merely explained to the jury that "the defendant (was) under no obligation to talk with the officer (and that) (t)he defendant was perfectly within his rights in refusing to talk to the officer." The most that can fairly be said of this comment is that it gave the jury one possible explanation for defendant's silence during custodial interrogation— a proper invocation of his constitutional privilege. But even given the caveat that defendant had a right to remain silent, his reason for so doing remained, from the jury's perspective, "insolubly ambiguous." *Doyle v. Ohio,*

*supra,* 426 U.S. at 617. The explanation of the trial court did not foreclose the jury from inferring that defendant's reliance upon his rights was evidence of his desire to conceal his guilt. Had the trial court taken immediate steps to prohibit that negative inference by forcefully instructing the jury that the testimony could not be considered for any purpose at all, the error might very well have been harmless. Without such action, however, the trial court's comment to the jury cannot be viewed as correcting the error. As in *Reichhoff,* the evidence of this defendant's custodial silence "not only had low probative value but also had a high potential for great prejudice." 76 Wis.2d at 382.

The constitutional error in this case was clear. The state's case against the defendant was weak as the Attorney General admits. The trial court's comment to the jury was insufficient to eliminate the potential prejudice from the erroneously admitted evidence. For these reasons, I would grant the motion by the state for confession of error and remand the case for new trial.

I am authorized to state that Justice NATHAN S. HEFFERNAN and Justice SHIRLEY S. ABRAHAMSON join me in this dissent.