**Michael L. RUDOLPH, Petitioner,**

v.

**James POWELL, Director, Respondent,**

**Civ. A. No. 78–C–308.**

United States District Court,
E. D. Wisconsin.

Oct. 30, 1979.

**850**

Michael Yovovich, Asst. State Public Defender, Madison, Wis., for petitioner.

Edward S. Marion, Asst. Atty. Gen., Madison, Wis., for respondent.

## DECISION AND ORDER

REYNOLDS, Chief Judge.

This is a petition for writ of habeas corpus brought pursuant to 28 U.S.C. § 2254 challenging the legality of petitioner's state court convictions for burglary and arson. Petitioner is currently in state custody at the Kettle Morraine Correctional Institution at Plymouth, Wisconsin. Only one issue has been presented for review by this Court: whether it was nonharmless error for the prosecution, as part of its case-in-chief, to elicit testimony concerning petitioner's silence both before and after his arrest.

On July 4, 1973, petitioner and his brother William were arrested for the burglary and arson of St. Joseph's Roman Catholic Church in Marinette, Wisconsin. The evidence introduced against petitioner at his trial was entirely circumstantial, consisting primarily of testimony from analysts from the state crime laboratory and the police officers who were present at petitioner's arrest. The most damaging testimony concerned the scientific analysis that was performed on the shoes that petitioner was wearing at the time of his arrest. One crime laboratory analyst testified that petitioner's shoes matched the footprints that were found at the scene of the crime. (Tr. at 105–110) He also testified that the footprints could have been made by the shoes that were taken from petitioner's brother or by any other shoe of the same size and pattern. (Tr. at 111) Another analyst testified that wax droppings were removed from petitioner's shoes which corresponded with the beeswax candles which were burned inside the church on the night of the burglary. (Tr. at 154–157) The wax droppings were coated by a layer of soot of a type which would be present at the scene of a fire. (Tr. at 158)

The testimony, which is the subject of this petition, was elicited during the direct examinations of Lieutenant Orville Gauthier and Officer Steven DeWitt of the Marinette Police Department. Lieutenant Gauthier testified as follows concerning his investigation of the burglary and arson of St. Joseph's:

"Q   During the course of the investigation of this fire, did you make any attempts to locate and talk to Michael Rudolph?

"A   Yes, I did.

"Q   When did you make these attempts and how?

"A   At one time July 1st, 1973, I had contacted Michael Rudolph's mother by telephone and asked her to inform both Michael and William Rudolph to contact me in some way that I wanted to talk to them about the arson and burglary.

"Q   All right, did anyone contact you?

"A   No.

"MR. DONOVAN: I object to this, Your Honor. I don't believe that this, —they are attempting to use this as an indication of guilt. I don't believe—

"THE COURT: Objection overruled." (Tr. at 51)

Shortly thereafter Lieutenant Gauthier was asked:

"Q Now, Lieutenant Gauthier, did you ever interrogate or talk to the defendant in connection with this fire?

"A I attempted to on July 6th, 1973, along with Chief Deputy Robert Kohlmann and someone else in the room.

"Q Will you tell us what transpired at that time?

"A Nothing. He didn't want to talk to me.

"Q Did you attempt to talk to him on any other occasion?

"A No, sir.

"MR. DONOVAN: I object to the offering of the evidence of the fact that the individual was standing on his constitutional rights and didn't want to testify.

"THE COURT: Oh, I think the jury is entitled to the explanation, the defendant is under no obligation to talk with the officer at all. The defendant was perfectly within his rights in refusing to talk to the officer." (Tr. at 56–57)

Officer DeWitt then testified concerning the arrest of petitioner and his brother. Just prior to the arrest, DeWitt attempted to question William who was sitting in a van with Michael. Asked whether he had been able to speak with William, DeWitt replied:

"A Billy didn't seem interested in talking with anyone at the time. He kept rolling his window up and he refused to say anything.

"Q What then happened?

"MR. DONOVAN: Your Honor, I think perhaps at this point I would like to object to the suggestion that there is an implication of guilt in these actions.

"THE COURT: There is an indication of what?

"MR. DONOVAN: Of William Randolph is implicating Michael by not going down and being questioned.

"THE COURT: We have gone through this before, of course. Again, I want to say for the record, a man has a right to refuse to talk to a police officer if he wishes. We have been through this before and I have overruled the objection and the objection is overruled." (Tr. at 78)

Following the completion of the prosecution's case, petitioner moved for a directed verdict of acquittal. The Court denied the motion, stating: "Well, I will agree this is a very close case. This is a touch and go deal, and yet I am going to let this case go to the jury." (Tr. at 169) Petitioner then introduced evidence that his brother had pleaded guilty to the burglary and arson of St. Joseph's Church. Petitioner introduced no further evidence and was found guilty of both charges.

Petitioner's conviction was affirmed by the Wisconsin Supreme Court in an unpublished per curiam decision. The United States Supreme Court, however, summarily vacated the Wisconsin Court's judgment and remanded the case for further consideration in light of *Doyle v. Ohio,* 426 U.S.610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). On remand, the Wisconsin Supreme Court, by a four to three majority, again affirmed the conviction, holding that the introduction of evidence concerning petitioner's refusal to speak with the police officers constituted harmless error. *Rudolph v. State,* 78 Wis.2d 435, 254 N.W.2d 471 (1977).

The State concedes that it was constitutionally impermissible for the prosecution to have elicited the testimony quoted above. See *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976); *United States v. Hale,* 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975); *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The State argues, however, that such error was harmless.

At least two circuits have held that the harmless error rule may be applied to the violation here complained of. *Chapman v. United States,* 547 F.2d 1240 (5th Cir. 1977); *Meeks v. Havener,* 545 F.2d 9 (6th Cir. 1976); see also *United States ex rel. Allen v. Rowe,* 591 F.2d 391 (7th Cir. 1979). The standard for assessing whether a constitutional violation amounts to harmless error is

set out in *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), which holds that the prosecution must prove beyond a reasonable doubt that such a violation was harmless. If there is "a reasonable possibility that the evidence complained of might have contributed to the conviction," there can be no finding of harmless error. *Chapman v. California,* supra, at 23, 87 S.Ct. at 827, quoting from *Fahy v. Connecticut,* 375 U.S. 85, 86–87, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963).

The State argues that there was substantial evidence of petitioner's guilt aside from the testimony concerning his pre-arrest and post-arrest silence. However, the record shows only meager support for the jury's verdict. In fact, the only evidence supporting the conviction is the laboratory analysis performed on petitioner's shoes. While the results of this analysis may well be legally sufficient to uphold the conviction, the evidence is hardly overwhelming. The jury may well have sought to buttress the scientific evidence with the testimony concerning petitioner's silence and whatever inferences could be drawn from it. Such testimony occurred at three different points during the trial and quite easily could have assumed undue importance considering the almost complete absence of other corroborating evidence. When there is very little evidence on which to base a decision, the evidence which actually is introduced may be given great weight. Thus, the Court cannot conclude that there is not a reasonable possibility that the testimony concerning petitioner's silence might have contributed to the jury's verdict.

The State also argues that the challenged testimony was rendered harmless as a result of the cautionary remarks made by the trial judge at the time the testimony was admitted. While it is true that the judge informed the jury that petitioner was within his rights in refusing to speak to the police, this alone was not enough to cure the error, for at the same time the trial judge made his remarks, he admitted the testimony into evidence. The jury, although informed that petitioner had a legal right not to speak to the police, was not instructed that petitioner's silence could not be taken as an indicia of his guilt. On the contrary, by admitting the testimony into the evidence, the Court gave the impression that the testimony could indeed be given probative value, thus compounding the error committed by the Government. Considering the paucity of other evidence in the case, this constituted nonharmless error.

IT IS THEREFORE ORDERED that the writ of habeas corpus be and hereby is granted.

IT IS FURTHER ORDERED that this order be stayed for ninety days from the date of its filing in order to afford the State an opportunity to retry petitioner or, in the alternative, if an appeal is taken, that the order be stayed pending appeal.