STATE, Respondent, v. RICHARDSON, Appellant.

*No. State 3. Argued September 5, 1969.—Decided September 30, 1969.*

(Also reported in 170 N. W. 2d 775.)

The cause was submitted for the appellant on the brief of *Alan D. Eisenberg* and *Eisenberg, Kletzke &*

*Eisenberg,* attorneys, and *Donald J. Jacquart* of counsel, all of Milwaukee, and for the respondent on the brief of *Robert W. Warren,* attorney general, *E. Michael McCann,* district attorney of Milwaukee county, and *Theodore J. Hodan,* assistant district attorney.

BEILFUSS, J.   The defendant sets forth three issues:

(1) Was the evidence sufficient to prove defendant's guilt beyond a reasonable doubt?

(2) Did the district attorney commit prejudicial error in his closing argument?

(3) Is the defendant entitled to a new trial in the interests of justice?

Our recent reports of criminal cases abound with the claim (mostly unsuccessful) that the evidence is insufficient to support the finding of guilty.

We have consistently and repetitiously stated that the test is not whether this court is convinced of the guilt of the defendant beyond a reasonable doubt but whether this court can conclude the trier of facts could, acting reasonably, be convinced beyond reasonable doubt of such guilt from the evidence it had a right to believe and accept as true. We stated the converse standard is that evidence, when considered most favorably to the state, must be so insufficient in probative value that it can be said that no trier of facts, acting reasonably, could be convinced of the guilt of the defendant beyond reasonable doubt.

When all of the elements necessary to constitute the crime charged appear in the evidence, the law of this state gives the trier of fact great latitude in determining the credibility of the witnesses and the weight of the testimony to resolve any evidentiary or factual disputes and to find the defendant guilty or not guilty as the case may be.

In *Finger v. State* (1968), 40 Wis. 2d 103, 110, 111, 161 N. W. 2d 272, we stated:

> " 'It is only when the evidence that the trier of fact has relied upon is inherently or patently incredible that the appellate court will substitute its judgment for that of the fact finder. . . .' "

A complete review of all of the evidence, under the standard of review set forth above, convinces us that the jury could properly have found the defendant guilty beyond a reasonable doubt of the crime charged.

The defendant does not challenge the fact that the complaining witness, Rita ———, was the victim of a violent and shocking forcible rape at 6 a. m. on April 7, 1967, in her university dormitory room.

The defendant claims the evidence is insufficient because of the identification and alibi testimony.

The facts necessary for a determination of this aspect of the case are as follows:

On April 7, 1967, Rita was nineteen years old and a second-year student at Marquette University. She and a roommate occupied a room on the third floor of a seventeen-story dormitory located on Wisconsin avenue in Milwaukee. Rita had gone to sleep about 2 a. m.; she woke her roommate at 5 a. m., as promised, with the aid of an alarm clock. The roommate dressed and left the room shortly after 5 a. m. Rita went back to sleep. She was awakened about 6 a. m. by a Negro male crouched at the side of her bed wielding a knife with a four and three-fourths inch blade. He placed the knife at her throat and said, "Hey, girl, move over." When Rita asked, "What are you doing here? I am just going to school," the assailant told her he would kill her if she screamed. The assailant got into her bed, removed her underclothing, struck her in the mouth when she protested, and forcibly raped her and consummated his evil purpose. The assailant then got out of the bed, closed his trousers, backed

to the door of the room with the knife in his hand and again threatened to kill Rita if she screamed.

Rita's estimate of the total time involved was five to ten minutes. The window shades in the room were raised. There was some, about 15 percent of high noon, daylight in the room. Rita looked at the defendant when she was awakened and until he hit her. She had her eyes closed during the actual act of sexual intercourse, and opened them again after the assailant got out of her bed and watched him as he faced her and backed to the door. Rita did wear glasses for nearsightedness but did not have them on at that time.

In the interval between April 7 and May 12, 1967, Rita was shown "thousands" of photographs at the police station. The only photograph she identified was that of the defendant. She viewed him in a police lineup and again identified him and persisted in her identification. The physical description of the assailant given to the police by Rita shortly after the crime closely resembled the defendant, except that she stated she did not know whether he had a moustache. She stated that prior to the police lineup she had never seen the defendant except in her room on the morning of April 7, 1967.

Two other girls who were residents of the dormitory identified the defendant as a man they had seen in the dormitory during the nighttime hours the day before the incident in question. One of the girls identified the photograph but said she could not be sure when she saw the defendant in person.

The defendant was thirty-one years old, married, and has resided in Milwaukee the past few years. On April 7, 1967, he had two jobs—a daytime job at B. F. Goodrich store about two blocks from the dormitory, and a nighttime job doing cleaning-maintenance work at two restaurants or stores.

The defendant testified that on April 7, 1967, he left his home with his wife about 2:30 a. m.; that the two of

them worked together and cleaned both stores; that at about 5 a. m., he called and talked to a Mr. Hackworth, his maintenance job employer; that he and his wife got home about 7 a. m.; that he changed his clothes, had breakfast and left for his B. F. Goodrich job about 7:20. He also testified that he worked every night on his maintenance job without exception during March and April of 1967.

The defendant's wife and Mr. Hackworth corroborated this alibi testimony. However, during the state's rebuttal a police officer, a Mr. Marshall, testified he interviewed Mr. Hackworth and that Hackworth stated the defendant did not always work every night; that sometimes someone else worked for him and that he did not work three nights during April. Marshall also testified that Hackworth, in response to a question as to whether the defendant was working the early morning hours of April 7, 1967, responded, "there was no way to prove that."

We conclude the identification testimony of the complainant, Rita, is positive, unequivocal, consistent and adequate. Her testimony is credible and corroborated to some extent; the jury, as conscientious persons, acting reasonably, could believe her testimony as to the identity of the defendant and accept it as the true fact.

Even without the challenge to the alibi by Officer Marshall's testimony, uncontradicted alibi testimony is not sufficient to raise a reasonable doubt of the guilt of the defendant, as a matter of law.

In *State v. Harris* (1968), 40 Wis. 2d 200, 208, 209, 161 N. W. 2d 385, we stated:

"The defendant takes the position that this alibi, corroborating the defendant's own testimony, was sufficient as a matter of law to raise a reasonable doubt of his guilt. A similar position was taken by the defendant in the case of *State v. Clarke* (1967), 36 Wis. 2d 263, 277, 153 N. W. 2d 61. In *Clarke* we recapitulated the cases holding that even an alibi corroborated and unimpeached

and not inherently incredible was merely additional evidence to be weighed by the jury and could be disregarded if not believed by the jury. In *Clarke,* we stated at page 277:

" 'In *State v. Stevens, supra,* an alibi was presented as a defense and the court held the credibility of alibi witnesses and the weight accorded to their testimony is properly a function of the jury. In *State v. Grahn* (1963), 21 Wis. 2d 49, 52, 123 N. W. 2d 510, the court noted that testimony supporting an alibi does not raise a reasonable doubt as a matter of law.

" ' "The defense of an *alibi,* if sufficiently established to raise a reasonable doubt in the minds of the jury, is a good defense. However, owing to the ease with which persons may be mistaken in dates long after the occurrence of a particular event, the ease with which an *alibi* may be made, and the difficulty of proving to the contrary, courts have not generally considered evidence of an alibi a conclusive defense. It is merely evidence to be weighed by the jury." *State ex rel. Dewey v. Kibbe* (1925), 186 Wis. 210, 212, 202 N. W. 333.' "

Under the facts of this case the jury could lawfully accept and give credence to the testimony of the complaining witness and reject the testimony of the defendant and his alibi witnesses. As a matter of appellate review it cannot be said the evidence is insufficient to support the finding of guilt.

The defendant contends the trial court abused its discretion and committed prejudicial error when it denied the defendant's motion for a mistrial because of statements made by the prosecutor and the conduct of police officers during final argument.

No objection was made during argument but the record reveals the following:

*"Mr. Eisenberg* [defendant's counsel]: If the court please, I feel compelled to make my record on this and I am going to enter my motion for a mistrial even as late as this in this trial for the following reason:

"When Mr. Boyle made his statement about Patrolman Marshall, who is now present in the courtroom,

sitting next to Patrolman Gibson on the far side of the courtroom opposite the jury, when Patrolman Marshall and Patrolman Gibson entered the courtroom they both sat turned face away from the jury.

"When Mr. Boyle made a statement about Officer Marshall, questioning whether or not either or both of them had moustaches, at that time Patrolman Gibson and Patrolman Marshall were turned face away. Then after Mr. Boyle concluded his statement as to whether or not both of them had moustaches, at that point Mr. Marshall and Mr. Gibson both simultaneously turned around.

"This in my opinion is an outrageous and unethical attempt to put evidence into the record after evidence has been closed, and these officers are present in the courtroom now, I saw them do it. If the court didn't see them do it let them be questioned right now as to whether or not it was done. It was contrived, it was an unethical attempt to put evidence into the record.

"*The Court:* Well, it transpired some time ago, at the time you made your objection to the statement made by the district attorney concerning Marshall. Why didn't you call it to my attention at that time?

"*Mr. Eisenberg:* Because the totality of what they had done did not strike me until after I had made my motion and furthermore it was in the middle of Mr. Boyle's argument and I could not ask the jury to go out in the middle of Mr. Boyle's argument.

"*The Court:* You interrupted before, you could have done it again. You could have made your objection in the record in the presence of the jury.

" . . .

"*The Court:* The motion is denied. The court was observing the arena of action and you were paying a great deal of attention to what Mr. Boyle was doing. I don't think that you were looking at Marshall and Gibson all the time, and if you had an objection at that time you should have made it.

"I see nothing untoward in the courtroom about those people that you have mentioned.

"The motion is denied.

"All right, call the jury."

The ruling on a motion for mistrial because of claimed prejudicial argument to the jury by counsel rests in

the sound discretion of the trial judge,[1] subject only to review for abuse of that discretion.

A concise statement of the rule in Wisconsin is set forth in *Fields v. Creek* (1963), 21 Wis. 2d 562, 572, 124 N. W. 2d 599:

"The content of the arguments by counsel to the jury is a matter resting in the discretion of the trial court. It is only when the trial court fails in its responsibility that this court will intrude. *Masterson v. Chicago & N. W. R. Co.* (1899), 102 Wis. 571, 78 N. W. 757. It is difficult to lay down precise standards which will successfully separate fair argument from unfair argument. We are not prepared to strike down all colorful, forensic thrusts before the jury. Oral argument to the jury need not be confined to the sterile reiteration of the testimony which was presented. Counsel have the right to analyze and exhort. As long ago as 1878, this court recognized that counsel in argument should be given 'the very fullest freedom of speech.' *Brown v. Swineford* (1878), 44 Wis. 282, 293.

"There is a point when enthusiastic advocacy becomes an appeal to prejudice. It is the burden of the trial court to make sure the arguments do not exceed the bounds of fairness."

As pointed out by the defendant's brief, this court has placed a ban on attempts to introduce new evidence during closing arguments. As set forth in *Flamme v. State* (1920), 171 Wis. 501, 507, 177 N. W. 596:

"The district attorney's statement in his closing argument, 'I knew of these acts of *Flamme* and his riding around town with these young people and his trips to Muscoda,' is objectionable as a statement of evidentiary facts not permitted by counsel as argument to the jury. The court upon objection should have cautioned the jury not to consider such statement as evidence in their deliberations on the case."

---

[1] *See Oseman v. State* (1966), 32 Wis. 2d 523, 528, 145 N. W. 2d 766; *State v. Holmstrom* (1969), 43 Wis. 2d 465, 168 N. W. 2d 574.

However, we do not consider this to be a statement of an evidentiary fact not in the record. The trial judge may well have considered the moustaches to be subject to the jury's right to observe any matters in obvious view from the jury box, just as they are entitled to observe the physical characteristics of all witnesses in the courtroom. An analogous objection was presented and subsequently dismissed in the Supreme Court of New Hampshire in *Williamson v. Derry Electric Co.* (1938), 89 N. H. 216, 217, 218, 196 Atl. 265:

"In argument plaintiff's counsel suggested that the defendant should have placed a runner or strip of carpet on its floor such as was on the court-room floor. It is asserted that counsel thereby introduced evidence through himself as a witness. If relevant and unprejudicial, what transpires in the jury's presence and what is necessarily obvious to them is evidence although it is not presented in the usual manner. It is in the case, as is a view, the manner and appearance of a witness, or a matter of common knowledge. And reference to an object in plain sight may be made if it is an appropriate illustration. *Land &c. Corporation v. Company*, 83 N. H. 518, 523."

The instant reference to the moustaches can easily be placed in the same category with other physical attributes of the witnesses and the courtroom itself. In addition, the trial judge, who was in a position to make a meaningful observation, stated, "I see nothing untoward in the courtroom about those people." We find no abuse of discretion by the trial judge in denying the motion for mistrial.

The well-established test for discretionary reversal under sec. 251.09, Stats., was reiterated in *Massen v. State* (1969), 41 Wis. 2d 245, 260, 163 N. W. 2d 616:

"In *State v. Harris, supra,* page 212, quoting from *Lock v. State, supra,* page 118, we stated:
" 'In order for this court to exercise its discretionary power under sec. 251.09, Stats., it should clearly appear from the record that for some reason it is probable there has been a miscarriage of justice. In order for this

court to exercise its discretion and for such a probability to exist we would at least have to be convinced that the defendant should not have been found guilty and that justice demands the defendant be given another trial.' "

The jury, without question, believed the testimony of the victim of this serious crime, as it had a right to do. There is no question in either fact or law that the crime was committed. The only question is one of identity. The record reveals the victim did have a sufficient opportunity to observe her assailant and no suggestion of a motive for naming the wrong person appears. She rejected the photographs of a great many potential suspects and then, without any equivocation, identified the defendant. The jury believed her, as did the able and experienced trial judge. It does not appear there has been a probable miscarriage of justice and we do not, therefore, order a new trial in the interest of justice.

*By the Court.*—Judgment and order affirmed.