Jane DOE, by her Guardian ad Litem, and John Doe, Plaintiffs-Appellants,†

v.

Richard ROE, M.D., Defendant-Respondent.

Court of Appeals

*No. 88–1699. Submitted on briefs April 14, 1989.—Decided June 14, 1989.*

(Also reported in 444 N.W.2d 437.)

†Petition to review denied.

367

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Timothy J. Aiken* and *Robert L. Jaskulski* of *Aiken & Mawice, S.C.* of Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Randal N. Arnold, Esq.* and *Susan R. Tyndall, Esq.* of *Kluwin, Dunphy, Hinshaw, Culbertson* of Milwaukee.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

NETTESHEIM, J. Jane Doe appeals from the disclosure provisions of a protective order entered in her medical malpractice case against Richard Roe, M.D.[1]

During trial, Doe's counsel notified the trial court that Doe had tested positive for the human immunodeficiency virus (HIV), which causes acquired immunodeficiency syndrome (AIDS). *See* sec. 146.025(1)(b), Stats. Doe is not presently suffering from AIDS. How-

---

[1]This court granted Jane Doe's petition for leave to appeal a non-final order on October 12, 1988.

The complaint also states a derivative cause of action on behalf of Doe's husband.

ever, her positive HIV test result indicates that she *may* acquire AIDS in the future. Based upon this revelation, the trial court granted Dr. Roe's motion for a mistrial. The order also denied Doe's motion for a protective order which would have precluded any disclosure. Instead, the court permitted disclosure of the test results to Dr. Roe's counsel for use by Dr. Roe at the new trial for any relevant purpose, pursuant to sec. 146.025(5)(a)9.

Doe claims error, arguing that the trial court's order of disclosure: (1) is contrary to the law restricting use of HIV test results, sec. 146.025, Stats.; (2) did not incorporate a finding of informed consent pursuant to sec. 146.025(2)(a); and (3) is an abuse of discretion under sec. 904.03, Stats. We conclude that the trial court's ruling was not erroneous under either sec. 146.025 or sec. 904.03. Accordingly, we affirm the order.

## FACTS AND PROCEDURAL HISTORY

Doe was a thirty-five-year-old department store executive when she gave birth to her first child on December 19, 1982. Within three days of giving birth, Doe lapsed into a coma. During this period, Dr. Roe was responsible for Doe's treatment. Doe was then transferred to Froedtert Hospital where she was diagnosed as suffering from thrombotic thrombocytopenia pupera (TTP). In the course of treating the TTP, Doe received massive plasma exchanges in January, 1983. Doe ultimately recovered, but suffers from serious neurological deficits as a result of the coma. These deficits include diminished mental capacity, such that she functions at a retarded level and can no longer maintain gainful employment.

On July 17, 1985, Doe filed a submission of controversy with the Wisconsin Patients Compensation Panels

alleging that Dr. Roe was negligent with respect to his diagnosis, maintenance, care and treatment of her in the postpartum period.[2] On March 19, 1986, an order was entered appointing a guardian ad litem for Doe. Doe then transferred her action to the circuit court on June 16, 1986. In September 1987, while hospitalized at Froedtert for a spleenectomy, elective testing was performed on Doe's blood. At that time, Doe signed a consent for HIV testing, a "conditions of admission" form and a consent for surgical procedures. The blood test results showed the presence of the HIV virus.

Three weeks prior to trial, Doe's attorney discovered the 1987 HIV results in Doe's Froedtert medical records. The parties had previously agreed to share Doe's medical records. However, Doe's attorney believed that the HIV test results were confidential information under sec. 146.025(5) and (6), Stats. Therefore, prior to filing the medical records, he directed his staff to delete that portion pertaining to the test results and insert a notation that information had been deleted. The HIV information was deleted, but a notation to that effect was mistakenly omitted. On the second day of trial, Doe's attorney discovered the omission and informed the trial court, *ex parte,* that the portions of the hospital records referring to Doe's positive HIV test result had been deleted pursuant to sec. 146.025(5).

Subsequently, the trial court called a meeting of all the attorneys at which the court informed Dr. Roe's counsel of the HIV test results. Dr. Roe moved for a mistrial or, in the alternative, for a continuance. Doe moved for a protective order pursuant to secs. 804.01 and 146.025, Stats., requesting that the HIV test results not

---

[2] The complaint also named two other health care providers as defendants. One physician was dismissed pretrial, and the other was dismissed on the fourth day of trial.

be disclosed. The trial court scheduled a hearing date and, in the absence of the jury, took testimony regarding the impact of the HIV test results on Doe's life expectancy. Three days later, the trial court held an *in camera* hearing. At the close of counsels' arguments, the court granted a mistrial, dismissed the jury and ordered Doe's counsel to disclose all information in their possession relative to the HIV testing to Dr. Roe's counsel.

Following the trial court's decision to order a mistrial, the parties brought several motions. Doe requested: (1) a protective order or, in the alternative, an order limiting investigation and use of the HIV result to damages alone; (2) a finding by the trial court as to whether Doe had given informed consent to the blood test; and (3) an order changing the case caption to maintain confidentiality on appeal.[3] Dr. Roe's counsel moved for limited relief from the confidentiality order to allow him to disclose the HIV results to Dr. Roe and his insurer.

The trial court denied Doe's request for a complete protective order and ordered limited disclosure of the HIV information to counsel, Dr. Roe and his insurer.[4] The court ruled that Dr. Roe could use the evidence at trial "for any appropriate or relevant purpose." The court declined to address the issue of Doe's consent because it lacked an adequate record on which to rule. The court also ordered that the case caption be changed to protect the identity of the parties.

The propriety of the trial court's mistrial order is not at issue. Rather, Doe appeals the disclosure provi-

---

[3] Doe also sought permission to disclose the HIV information to the attorney for one of the doctors with whom she had previously settled.

[4] Doe was also permitted to disclose the HIV information to the doctor with whom she had previously settled. *See supra* note 3.

sions of the order. She does not contest the relevancy of the HIV test results to this medical malpractice action. Instead, she contends that the HIV test results are privileged, are not subject to discovery, and are not admissible at trial. Even if the test results are admissible, Doe argues that she did not give informed consent to have the test taken in the first place, thus prohibiting disclosure of the test results under sec. 146.025(2) and (5), Stats. Last, Doe argues that the trial court abused its discretion under sec. 904.03, Stats., when it made its preliminary finding of admissibility, because the relevancy of the test is outweighed by its prejudicial effect. We will address each of Doe's arguments in turn.

Although this case had progressed into the jury trial phase, the declaration of the mistrial necessitates a new trial. The order under review bears upon evidentiary matters in the further trial yet to be conducted. As such, the order is actually *pretrial* in nature. The court was faced with two questions when the issue arose. Was the evidence of Doe's HIV test result admissible under sec. 146.025(5)(a)9, Stats., and the other rules of evidence and, if so, to what extent was Doe entitled to a protective order?

## CONFIDENTIALITY UNDER
## SEC. 146.025(5)(a)9, STATS.

Doe argues that the trial court misinterpreted the law when it ruled that disclosure was permitted under sec. 146.025(5)(a)9, Stats. Doe interprets sec. 146.025(5)(a)9 to prohibit disclosure of HIV test results in all cases except when the health and welfare of the general public is at stake or when the evidence is offered to prove character and the procedural requirements of sec. 901.05, Stats., are met. Since neither is present in

this case, Doe reasons that the test results are inadmissible. Doe also contends that disclosure of her test results would undermine the public policy reasons behind the legislature's enactment of sec. 146.025.

Section 146.025, Stats., relating to the confidentiality of the HIV test reads, in relevant part:

> **(5) CONFIDENTIALITY OF TEST.** (a) The results of a test for the presence of HIV or an antibody to HIV may be disclosed only to the following persons or under the following circumstances, except that the person who receives a test may under sub. (2)(b) or (3) authorize disclosure to anyone:
>
> . . ..
> 9. Under a lawful order of a court of record except as provided under s. 901.05.

In addition to subsec. 9, the statute enumerates thirteen other exceptions to the confidentiality of HIV test results. These other exceptions travel primarily to public health and welfare concerns, and permit disclosure to the test subject and disclosure to persons who may come in contact with the test subject's bodily fluids. *See* secs. 146.025(5)(a)1–8, 10–14.

The interpretation of a statute and the statute's application to a set of facts present questions of law. *L & W Constr. Co. v. Wisconsin Dep't of Revenue,* 149 Wis. 2d 684, 688, 439 N.W.2d 619, 620 (Ct. App. 1989). When the facts are undisputed and only a question of law is at issue, this court owes no deference to the findings of the circuit court. *Id.* at 688–89, 439 N.W.2d at 620.

In construing sec. 146.025(5)(a)9, Stats., we are to give effect to the intent of the legislature. *See L & W Constr.,* 149 Wis. 2d at 689, 439 N.W.2d at 620. We must

373

ascertain that intent by first looking to the language of the statute itself and giving the language its ordinary and accepted meaning. *Id.* Only if the statutory language is ambiguous may we resort to outside sources to aid statutory construction. *Marshall-Wisconsin Co. v. Juneau Square Corp.,* 139 Wis. 2d 112, 133, 406 N.W.2d 764, 772 (1987).

Doe argues that sec. 146.025(5)(a)9, Stats., is ambiguous because reasonably well-informed persons could construe the statute in two different ways. *See Midwest Mut. Ins. Co. v. Nicolazzi,* 138 Wis. 2d 192, 196, 405 N.W.2d 732, 734 (Ct. App. 1987). Thus, she urges this court to look beyond the language of the statute to ascertain the legislature's intent. *See id.*

Doe argues that when subsec. 9 is read in context with the other thirteen exceptions to sec. 146.025(5)(a), Stats., and in light of the legislative intent behind the enactment of the statute, a reasonably well-informed person could construe disclosure "[u]nder a lawful order of a court of record" to be appropriate only when public health or welfare is at stake. *See* sec. 146.025(5)(a)9. She relies on the statutory construction principle of *ejusdem generis,* stating that when a general term is used in a statute, and that term is either preceded or followed by more specific terms, the general term is to be construed to embrace something similar to the specific terms. *See State v. Engler,* 80 Wis. 2d 402, 408, 259 N.W.2d 97, 100 (1977).

We are unpersuaded by Doe's argument that because she has detected a general health and safety "theme" in the other exceptions to sec. 146.025(5)(a), Stats., the language of subsec. 9, which invokes no such considerations, must be similarly construed. We conclude that each subsection of the statute stands on its

own and serves its own legislative goal. Subsection 9 provides in clear and unambiguous language that HIV test results may be disclosed "[u]nder a lawful order of a court of record except as provided under s. 901.05." Sec. 146.025(5)(a)9. When the statutory language is clear and unambiguous, we need not resort to the rules of statutory construction in searching for the statute's meaning. *Marshall-Wisconsin Co.*, 139 Wis. 2d at 133, 406 N.W.2d at 772.

Accordingly, we reject Doe's argument that disclosure "[u]nder a lawful order of a court of record" also means that the disclosure must be related to public health or safety considerations. We decline to extend the reach of the statute beyond that indicated by its clear language.

We also reject Doe's contention that the sec. 901.05, Stats., exception written into sec. 146.025(5)(a)9, Stats., precludes disclosure of the HIV test result. The exception under sec. 901.05 only prohibits disclosure of HIV test results if the test results are offered to show evidence of a person's character at trial and the procedural safeguards of sec. 901.05 have not been complied with. Doe argues that the legislature included this exception in order to signify that disclosure under a court order could only be made when the evidence *is* being offered to show proof of character.

Doe's interpretation is contrary to the clear language of the statute, which provides for disclosure under a court order *except* when the evidence is being offered to show proof of character under sec. 901.05, Stats. Sec. 146.025(5)(a)9, Stats. In this case, the evidence of Doe's test results has not been offered to show evidence of her character or for the purpose of showing that she acted in

conformity with that character on a particular occasion. *See* sec. 901.05(2). Thus, the exception is not applicable to this case. We therefore conclude that sec. 146.025(5)(a)9 does not preclude the admission of Doe's HIV test result at trial. The trial court did not err in its reading of the statute and therefore it did not abuse its discretion on this evidentiary question.

## PROTECTIVE ORDER AND PROBATIVE VALUE VERSUS RELEVANCY

Having concluded that sec. 146.025(5)(a)9, Stats., does not require that disclosure of Doe's HIV test results be related to public health and safety concerns, we now turn to whether the order otherwise qualifies as a "lawful order of a court of record" under the statute.[5] This, we conclude, turns upon whether the trial court properly balanced the probative value of the evidence against its prejudicial aspects pursuant to sec. 904.03, Stats., and whether the disclosure order was valid under the protective order statute, sec. 804.01(3), Stats. We address these considerations in a single discussion since: (1) both raise abuse of discretion issues (*see State v. Stinson*, 134 Wis. 2d 224, 232–33, 397 N.W.2d 136, 139 (Ct. App. 1986), as to evidentiary questions and *Earl v. Gulf & W. Mfg. Co.*, 123 Wis. 2d 200, 208, 366 N.W.2d 160, 164 (Ct. App. 1985), as to protective order questions); and (2) both require a balancing of probative value against prejudicial aspects.

As we have previously noted, Doe does not challenge the relevancy of the HIV result. Rather, her contention is that the trial court improperly weighed the balancing scales in favor of the probative value of the evidence.

---

[5] It is undisputed that the circuit court is a court of record. The issue, thus, narrows to whether the order is "lawful."

Doe argues that the stigma associated with a positive HIV test would be unduly prejudicial to her and outweighs any probative value the test may have. We disagree and conclude that the court properly exercised its discretion on this question.

The trial court's remarks at both the mistrial hearing during trial and the later hearing on the protective order reflect significant judicial reflection on this question. The court recognized the novelty of this issue, the weight of the decision and the significant consequences to both parties regardless of who was favored by the ruling. Ultimately the court concluded:

> Part of the problem lies in the fact that the defendant Dr. Richard Roe quite properly says we cannot allow the jury to be given a set of circumstances in a vacuum as it were without knowledge of all of the surrounding possibilities that might bear upon or affect their judgment . . .. The defendant . . . certainly has a right to say to the Court unless the jury has all of the facts available in its possession they cannot make a studied and intelligent decision with reference to those matters . . ..

Thus, the court saw the HIV evidence as clearly relevant to Doe's medical condition and the issue of damages and also potentially relevant to Dr. Roe's alleged causal negligence.

The trial court's reasoning process is abundantly reflected in the record. This discretion was exercised in accord with proper legal standards and the facts of the case. *Stinson,* 134 Wis. 2d at 232, 397 N.W.2d at 139. No abuse of discretion occurred.[6] Thus, the order properly

---

[6] We stress that we view the trial court's rulings on this question as akin to rulings on a motion in limine. Such rulings are

qualifies as a "lawful order of a court of record" within the meaning of sec. 146.025(5)(a)9, Stats.

## CONSENT

Next, Doe argues that the trial court erred when it refused to make a factual finding regarding Doe's consent to the HIV test. The court declined to rule on the issue, citing the lack of an adequate record on which to make a finding and the need for discovery on the question.

Doe complains that the issue of informed consent is a threshold requirement which must be satisfied before the court can order disclosure. In a vacuum, we might agree with Doe. However, we again must bear in mind the unique posture of this case when the issue was raised. Trial was already underway when the HIV test result surfaced. The court deemed this evidence important to Dr. Roe's ability to fairly defend against Doe's claims. Therefore, the mistrial was ordered. We do not view the court's refusal to rule on whether Doe's consent was "informed" as required by sec. 146.025(2)(a), Stats., as a final and conclusive ruling on the question. Rather, the court concluded that a ruling could not be made until the parties had conducted discovery on the issue and the court had the benefit of a full record. This clearly suggests that the court would rule with finality on the matter when the issue had been fully explored. The record does not reflect that Doe asked the court to defer implementing the disclosure order until a substantive ruling on the consent question was forthcoming.

oftentimes, of necessity, provisional and subject to further ruling at trial when a fuller record is available. The trial court is free to review the provisional ruling at trial in light of any fuller record then existing.

378

██

We see no abuse of discretion in the trial court's handling of this matter. This entire matter arose unexpectedly during the middle of a jury trial. Dr. Roe had no prior opportunity to explore the allegation of Doe's "uninformed consent" by discovery and was legitimately unprepared to address it. For the court to have made a substantive ruling on a surprise critical issue would have likely been an abuse of discretion. The fairer and better choice was to defer a ruling. Certainly no abuse of discretion occurred by choosing to do so.

*By the Court.*—Order affirmed.