STATE of Wisconsin, Plaintiff-Respondent,†

v.

Ronald JACKSON, Defendant-Appellant.

Court of Appeals

*No. 96–1618–CR. Submitted on briefs April 28, 1997.—Decided June 25, 1997.*

(Also reported in 567 N.W.2d 920.)

†Petition to review granted.

On behalf of the defendant-appellant, the cause was submitted on the brief of *Glenn L. Cushing*, Assistant State Public Defender.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, Attorney General, and *Marguerite M. Moeller*, Assistant Attorney General.

Before Snyder, P.J., Brown and Anderson, JJ.

ANDERSON, J.  Ronald Jackson appeals from two judgments of conviction, one for first-degree sexual assault, kidnapping while armed, robbery and threats to injure as a repeater in violation of §§ 940.225(1)(b), 940.31(1)(b), 939.63, 943.32(1)(a), 943.30(1), STATS., and one for armed burglary in violation of §§ 943.10(1)(f) and 943.10(2)(a), STATS., 1993–94.[1] On appeal, Jackson argues that the trial court committed reversible error by: (1) precluding cross-examination of the victim, Kelly H., and not allowing Jackson to testify regarding prior acts of consensual sex with Kelly H. and (2) allowing the State to introduce letters Jackson had written to his girlfriend, Jennifer Anderson, in an attempt to impeach Kelly Anderson, Jennifer's sister.

We conclude that the court's initial determination to exclude any evidence of prior acts of consensual sex between Jackson and Kelly H. was correct under § 972.11(2), STATS. However, when the State questioned Jackson about Kelly H.'s motive to lie, the evidence of prior acts of consensual sex became relevant and admissible. The court's determination to the contrary constitutes reversible error. We therefore reverse the judgments of conviction and remand for a new trial.

The conviction stems from an incident that occurred on December 1, 1994, between Jackson and Kelly H., who was Jennifer's roommate. However, recitation of the facts pertaining to the alleged sexual assault are not required to address the evidentiary issues Jackson raises on appeal. The facts necessary to resolve the evidentiary issues will be set forth in that portion of the opinion. The following is a brief procedural history of the case.

---

[1] The judgment of conviction incorrectly cited § 943.10(f)(2)(a), STATS.

On December 2, 1994, Jackson was charged with five separate counts for an alleged sexual assault and robbery that occurred the night before at Jennifer and Kelly H.'s apartment. Jackson pleaded not guilty. Prior to trial, Jackson filed a motion to allow evidence of prior sexual contact between Jackson and Kelly H. which was denied. A jury trial was held from July 31, 1995, through August 4, 1995. Jackson was found guilty on all five counts and received consecutive sentences totaling sixty-five years in prison followed by long-term probation. Jackson appeals.

### STANDARD OF REVIEW

■

The issues Jackson raises on appeal all relate to the introduction or exclusion of evidence. The admissibility of evidence rests within the sound discretion of the trial court. *See Ritt v. Dental Care Assocs.*, 199 Wis. 2d 48, 72, 543 N.W.2d 852, 861 (Ct. App. 1995). A discretionary determination must be the product of a rational mental process whereby the facts of record and the law relied upon are stated together, leading one to conclude that the court has made a reasoned determination. *See Hartung v. Hartung*, 102 Wis. 2d 58, 66, 306 N.W.2d 16, 20–21 (1981). The issue on appeal is whether the trial court exercised its discretion in accordance with acceptable legal standards and the facts of record. *See State v. Pharr*, 115 Wis. 2d 334, 342, 340 N.W.2d 498, 501 (1983). This court will not find a misuse of discretion if there is a reasonable basis for the trial court's determination. *See id.* In reviewing a claimed evidentiary error, the reviewing court will examine the reasons stated by the court for the denial of the evidence, and if the trial court's explanation does not adequately explain its exercise of discretion, the

reviewing court will independently examine the record to determine whether a reasonable basis exists to sustain the ruling. *See State v. Clark*, 179 Wis. 2d 484, 490, 507 N.W.2d 172, 174 (Ct. App. 1993).

### RAPE SHIELD LAW

Jackson's first contention is that evidence of prior consensual intercourse between Kelly H. and him is admissible under the rape shield law to show consent and to establish the full context of their relationship. Just before trial, Jackson filed a motion to admit evidence of prior sexual contacts between Kelly H and him. The court conducted an evidentiary hearing into the matter. In Jackson's offer of proof and at the evidentiary hearing, Jackson averred that he had consensual sexual intercourse with Kelly H. on three occasions, once in Illinois and twice in Kenosha at the apartment. However, he "didn't want Jenny to find out, so [he] just cut it off." Jackson denied having any sexual contact with Kelly H. on December 1. Rather, Jackson explained that he and Kelly H. got into a "little scuffle" over money that Jackson owed her for rent and a past due phone bill.

In Wisconsin, the rape shield law prohibits the admission of evidence of a complainant's prior sexual conduct with three exceptions. *See* § 972.11(2)(b), STATS., 1993–94. The trial court must make three determinations under §§ 972.11(2)(b)1 and 971.31(11), STATS.,[2] before admitting evidence of past conduct with

---

[2] Section 972.11(2)(b), STATS., 1993–94, provides in relevant part:

> [A]ny evidence concerning the complaining witness's prior sexual conduct . . . shall not be admitted into evidence during the course of

208

the defendant: (1) whether the proffered evidence fits within § 972.11(2)(b)1; (2) whether the evidence is material to a fact at issue in the case; and (3) whether the evidence is of sufficient probative value to outweigh its inflammatory and prejudicial nature. *See State v. DeSantis*, 155 Wis. 2d 774, 785, 456 N.W.2d 600, 605 (1990).

After the evidentiary hearing, the trial court ruled out any issue of Kelly H.'s consent because Jackson's defense was that he only had a scuffle over money with Kelly H., but he denied any sexual contact. "Because there is no issue with reference to bias or motive, certainly sexual bias or sexual motive," regarding Kelly H., the court found that the three prior acts, even if true, were not material to a fact in issue. The court noted that even if the acts were material to a fact in issue, "whatever probative value it might have concerning some general thought that . . . the prior acts, when [Kelly H.] had an argument with [Jackson], would cause her to change the sense in terms of the sexual encounters from one of consent to one of assaultive behavior, I think, stretches the imagination. . . ." The court concluded that the evidence of prior sexual

the . . . trial, nor shall any reference to such conduct be made in the presence of the jury, except the following . . .:

. . . .

1. Evidence of the complaining witness's past conduct with the defendant. . . .

Section 971.31(11), STATS., 1993–94, provides:

In actions under s. 940.225, 948.02, or 948.095, evidence which is admissible under s. 972.11(2) must be determined by the court upon pretrial motion to be material to a fact at issue in the case and of sufficient probative value to outweigh its inflammatory and prejudicial nature before it may be introduced at trial.

contacts had very little probative value which was outweighed by the inflammatory and prejudicial nature.

We agree. Under the rape shield law, evidence of a complaining witness's prior sexual contact with the defendant is admissible only upon a pretrial determination by the court that it is "material to a fact at issue in the case." Sections 972.11(2)(b)1 and 971.31(11), STATS., 1993–94. "Generally, prior consensual sexual activity between the defendant and the victim *is* considered admissible and relevant to the issue of whether the victim *consented to the sexual conduct with which the defendant is charged*." *State v. Neumann*, 179 Wis. 2d 687, 702 n.5, 508 N.W.2d 54, 60 (Ct. App. 1993) (quoted source omitted) (second emphasis added). In this case, however, Jackson denied that any sexual contact occurred and consent was not at issue. As a result, any evidence of alleged prior consensual sexual activity between Jackson and Kelly H. was no longer relevant.

The trial court also reasoned that the evidence has very little probative value to any issue in the case and is outweighed by the inflammatory and prejudicial nature. It is apparent that Jackson's offer of proof failed to adequately highlight his theory that because of their sexual relationship, Kelly H. had a motive to fabricate the allegations. Although an offer of proof need not be stated with complete precision or in unnecessary detail, it should state an evidentiary hypothesis which is supported by a sufficient statement of facts to warrant the conclusion or inference that the trier of fact is urged to adopt. *See Milenkovic v. State*, 86 Wis. 2d 272, 284, 272 N.W.2d 320, 326 (Ct. App. 1978). We

conclude that the trial court properly exercised its discretion when it denied Jackson's pretrial motion.[3]

If this were as far as things went in this case, our discussion would end here. However, on cross-examination of Jackson, the State "opened the door" for the admission of the evidence of prior sexual contacts between Jackson and Kelly H. when it questioned Jackson about Kelly H.'s motives. Initially, the prosecutor accused Jackson of attacking Kelly H.'s credibility and of trying to convince the jury that she was a liar, vindictive and malicious. The discussion then turned to Kelly H.'s motives:

Q: So, a woman who graduates from college, right?

A: Yeah.

Q: Has a long relationship with a boyfriend for some four-and-a-half years, right?

---

[3] On appeal, Jackson's appellate counsel asks us to apply *State v. Shillcutt*, 116 Wis. 2d 227, 236–37, 341 N.W.2d 716, 720 (Ct. App. 1983), *aff'd*, 119 Wis. 2d 788, 350 N.W.2d 686 (1984), wherein we held that other crimes evidence is admissible to establish the background relationship between the defendant and the State's witnesses. He argues that consistent with *Shillcutt*, the admission of the evidence was necessary for the jury to fully understand the context of the case and it was error of constitutional dimension to exclude it. As noted by the State, the other crimes evidence in *Shillcutt* was subject to the balancing test employed in § 904.03, STATS., which mandates that the evidence be admitted unless the probative value is substantially outweighed by the danger of unfair prejudice. Here, the issue requires the application of § 971.31(11), STATS., which "reverses the weighing of evidence found in [§ 904.03] . . . [and] is biased *against* admissibility: the evidence must have sufficient probative value to outweigh its 'inflammatory' and 'prejudicial' nature." 7 DANIEL D. BLINKA, WISCONSIN PRACTICE § 420.4, at 177 (1991). We conclude that *Shillcutt* is inapposite.

A: Two boyfriends.

Q: Has a long relationship with this man, Tom [G.], for four-and-a-half years, and you're telling us that she is going to chuck all of that to come into this courtroom and falsely accuse you of raping or trying to rape her. That is your testimony here today?

A: Yes, it is.

Q: And you're offering here, for the motive for why she wants to do that, the fact that she had some disagreement over finances with you in the home?

A: No, it was more to it than it [sic]. It was more issues that could have been brought out into court that I was told I couldn't talk about.

Q: Mr. Jackson, you're suggesting here that this woman just has it in for you, aren't you?

A: Very much so.

Q: And one of the things that you used to support that is this claim that she owed you money, or you owed her money rather, and that is one of her motivations, right?

A: That's what she said.

Out of the presence of the jury, Jackson requested that the rape shield issue be reevaluated because the court had the benefit of the background of this case and more information on which to make a decision concerning this matter. Jackson's counsel argued that "it's highly relevant to the question of her possible motives and her relationship with Mr. Jackson." The court denied Jackson's request based on its prior reasoning and specifically ordered Jackson not to mention his allegation of prior sexual contact with Kelly H. Accordingly, Jackson was barred from explaining Kelly H.'s potential motives for lying on redirect.

Jackson argues that the trial court's ruling violated his constitutional right to present a defense and to testify in his own defense. We agree that the trial court's ruling violated Jackson's constitutional right to present a defense.[4]

As this court concluded in *State v. Herndon*, 145 Wis. 2d 91, 126, 426 N.W.2d 347, 361 (Ct. App. 1988), *overruled on other grounds*, 155 Wis. 2d 633, 465 N.W.2d 325 (1990), it is

> universally held that both cross-examination and witnesses brought on behalf of the defendant may show prior consensual sex if that evidence . . . shows that the complainant may be biased or have a motive to fabricate the charges. In such cases, the

---

[4] The dissent starts with Jackson's pretrial offer of proof and zeros in on one question and answer to build its case that Jackson never argues that his prior sexual relations with Kelly H. goes to her motive to fabricate. From this the dissent argues that the prosecution did not "open the door," during cross, to admission of the prior sexual relations. The trouble with the dissent's approach is that it fails to acknowledge that pretrial rulings on motions in limine are provisional. *See Doe v. Roe*, 151 Wis. 2d 366, 377–78 n.6, 444 N.W.2d 437, 442 (Ct. App. 1989). As a trial ebbs and flows, the trial court may have to revisit these provisional rulings to make necessary adjustments in light of the evidence and legal argument presented. That is what happened in this case. The prosecutor engaged in a lengthy colloquy with Jackson exploring Kelly H.'s motives to fabricate. This exchange, which we have set forth above, sailed into the uncharted waters of motives the defense had not raised on direct. Rather than stay the safe course of exploring Kelly H.'s financially based motives, the prosecutor darted from one motive to another and, unfortunately, asked the cataclysmic question which Jackson could not answer because of the court's earlier ruling. It is obvious to us that the prosecutor got caught up in the moment and asked one question too many.

issues of a witness' bias and credibility are not collateral, and the rape shield law must give way to the defendant's sixth amendment rights.

In addition, this court has previously pointed out that "[r]easonable limits may be based upon inquiry into matters impacting on a prosecution witness' credibility 'based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant,' " especially where the attack on credibility falls under the rape shield law. *State v. Olson*, 179 Wis. 2d 715, 724–25, 508 N.W.2d 616, 620 (Ct. App. 1993) (quoted source omitted). The reverse is true, however, when the evidence is "a more particular attack on credibility aimed toward revealing possible biases, prejudices or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand." *Id.* at 725, 508 N.W.2d at 620 .

We conclude that the State "opened the door" by questioning Jackson as to Kelly H.'s motives and Jackson should have been allowed to fully respond to this question, as well as be given the opportunity to cross-examine Kelly H. as to her stated motive. It is the jury's role to determine which of the contradictory statements it believes. *See State v. McCallum*, 208 Wis. 2d 463, 490 n.12, 561 N.W.2d 707, 717 (1997, Abrahamson, J., concurring). A trial conducted in violation of the defendant's constitutional right to present a defense is a "trial that flouts fundamental concepts of justice basic to our system." *Virgil v. State*, 84 Wis. 2d 166, 192, 267 N.W.2d 852, 865 (1978). Accordingly, we conclude that the trial court misused its discretion when it denied Jackson's motion to revisit this issue and we

reverse its prior ruling barring evidence of consensual sexual relations.

## USE OF JACKSON'S LETTERS

Jackson next argues that the trial court committed reversible error when it allowed the State to attack his character by introducing letters he had written to his girlfriend, Jennifer Anderson. Although the trial court's rulings as to the letters are not dispositive, we wish to address it because both parties have briefed the issue and the alleged errors are likely to recur upon retrial. *Cf. id.* at 193, 267 N.W.2d at 866 (we will not address other alleged errors which are unlikely to recur on retrial).

The pertinent facts are as follows. While Jackson was incarcerated and waiting for trial, he wrote letters to Jennifer almost daily. The language, although typical for the pair, could shock the jury because it is very angry, demeaning and disrespectful towards Jennifer.

Two of these letters were introduced by the State at trial. The State first presented them during its examination of Jennifer, an adverse witness. The court held that the letters could be used to establish that Jackson commonly used the words "bitch" and "pussy." The letters were not to be used to demonstrate that Jennifer had a motive to fabricate her testimony because of the threatening language in Jackson's letters.

During the State's cross-examination of Kelly Anderson, Jennifer's younger sister, five particularly salient and inflammatory statements from the letters were brought before the jury. Despite its earlier ruling, the court allowed Kelly to discuss these threatening statements in order to explain her earlier comment

that she discussed the *non-threatening* letters with her mother.

The State also attempted to use the letters to cross-examine Jackson to provide the jury with a "full understanding of exactly what makes this man tick, how he thinks, how he acts, and what he does"—they demonstrate his "domination, control and threatening behavior that is at the essence of why this offense occurred." The court questioned their relevancy to Jackson's actions on December 1 and concluded that the probative value did not outweigh their prejudicial effect.

Jackson now argues that the State unfairly utilized language from the letters to suggest to the jury that he "was a violent domineering individual who acted in conformity with his character." By allowing the State to introduce the violent and threatening language to the jury during Kelly's testimony deprived Jackson of a fair trial, requiring a new trial. We agree.

First, we fail to see how the letters are relevant to this case at all, even in the context of Jackson's use of the words "bitch" and "pussy." Jackson did not deny using that language. So what did that evidence contribute besides piquing the jury's interest?

Even assuming, without deciding, that those selected portions of the letters *may be relevant*, we nevertheless conclude that any further mention of the letters was unfairly prejudicial to Jackson and should have been excluded by the court under § 904.03, STATS. Section 904.03 authorizes the exclusion of evidence when its probative value is substantially outweighed by the danger of unfair prejudice. "The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different

from proof specific to the offense charged." *Old Chief v. United States*, 117 S. Ct. 644, 650 (1997). " ' "Unfair prejudice" within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.' " *Id.* (quoted source omitted). The introduction of the letters was unfairly prejudicial. They were inflammatory and are of such a nature as to evoke an emotional response from the jury.

This is especially true when coupled with the prosecutor's emotionally charged attack on Jackson's credibility and character during closing arguments. The prosecutor emphasized:

> Perhaps, the most devastating aspect of his credibility has its roots in his origins in these letters. . . .
>
> [A]ccording to Mr. Jackson, [these letters] don't demonstrate that he likes to control and dominate women. They don't demonstrate that when women challenge him . . . that he's going to be vindictive or threatening or assaultive or domineering, do they? These letters tell the essence of who Mr. Jackson is, and why this offense occurred.
>
> Ladies and Gentlemen, rape is not about sex. It's about power. It's about control. It's about domination.

The prosecutor continued his emotional assault on rebuttal:

> [C]ounsel says that the letters are irrelevant. . . . When those letters reflect what Ronald Jackson is all about and that conduct and that thought process and that control and domination and not taking anything from women, that's the essence of this crime. . . . Ronald Jackson's words in that letter give you the best picture of who he is, and what he's all

about. And you know what, that picture was painted on the evening of December 1, 1994, and Kelly [H]. bears the scars of that. . . . You think about those scars and that trauma and that victimization when you decide who to believe.

Not only are these comments an offensive use of prejudicial evidence, but they are contrary to the court's prior rulings on the use of these letters. Although Jackson did not object to these comments, they were nevertheless inappropriate. Closing arguments are limited to fair comment on the facts of the record; however, arguing facts not found in the evidence is inappropriate. *See State v. Richardson*, 44 Wis. 2d 75, 83–84, 170 N.W.2d 775, 780 (1969). Nevertheless, the burden is on defense counsel—the trial court had no sua sponte duty to limit the closing arguments—to object to questionable overzealous commentary by the prosecutor prior to the return of the verdict or the objection is waived on appeal. *See Watson v. State*, 64 Wis. 2d 264, 279, 219 N.W.2d 398, 406 (1974).

*By the Court.*—Judgments reversed and cause remanded.

BROWN, J. *(dissenting)*. The doctrine of "curative admissibility" is a remedy that a trial court may apply when a party "opens the door" to otherwise inadmissible evidence by trying to exploit that evidence to the disadvantage of the opposing party.[1] In this case, the

---

[1] *See* Edward J. Imwinkelried, *Judicial Remedies for the Exposure of the Jury to "Irrelevant" Evidence*, 34 HOUS. L. REV. 73, 86–87 (1997); Dale A. Nance, *A Theory of Verbal Completeness*, 80 IOWA L. REV. 825, 869 (1995).

majority concludes that the prosecutor "opened the door" to the shielded evidence concerning Kelly H.'s prior sexual relationship with Jackson when he asked Jackson if his financial disagreement with Kelly H. was the reason why Kelly H. was allegedly fabricating the charges against him. *See* majority op. at 211. With this question, the majority reasons that the prosecutor "opened the door" to the general issue of Kelly H.'s credibility and thus the trial court should have permitted Jackson to introduce the shielded evidence regarding Kelly H.'s prior sexual conduct. *See* majority op. at 213.

I believe that the majority has misapplied the doctrine of curative admissibility. Jackson had previously testified that his financial disagreement with Kelly H. was the only source for the tension between them. The prosecutor's attempt to confirm Jackson's theory of the case, therefore, did not "open the door" to the issue of Kelly H.'s overall credibility. I therefore dissent from the majority's decision that the trial court should have permitted Jackson to refer to the evidence which it previously shielded under the rape shield statute. *See* majority op. at 213. I would affirm Jackson's conviction.[2]

---

[2] The majority accepts Jackson's other claim that the trial court erred when it admitted the letters that Jackson had written to Jennifer because those letters were not relevant. *See* majority op. at 216. While I agree that these letters should not have been admitted, I would nonetheless uphold Jackson's conviction because I believe that this error was harmless. Although these letters negatively affected Jackson's credibility, this case was really about whether Kelly H.'s version of the events was credible. As Jackson's defense was that the assault never occurred, his guilt turned on the whether the jury believed Kelly H.'s claims that this assault occurred. Thus, evidence which

I will begin my analysis with a brief review of the trial court's pretrial ruling relating to Kelly H.'s prior sexual conduct. I will demonstrate that Jackson was the one who first offered the evidence that Kelly H. was biased against him because of their financial disagreement. I will then explore what took place during trial. Here, I will show that the prosecutor never "opened the door" to the issue of Kelly H.'s overall credibility and never tried to exploit the shielded evidence concerning Kelly H.'s prior sexual conduct.

I now turn to the pretrial proceedings during which the trial court correctly rejected (I agree with the majority on this matter) Jackson's request to introduce the evidence regarding his and Kelly H.'s prior sexual relationship. I begin by emphasizing that Jackson testified during the evidentiary hearing. He thoroughly described the living and financial arrangements between himself, his fiancee, Jennifer, and Kelly H. Moreover, Jackson described the background and intimate details of his alleged sexual relationship with Kelly H. On this latter subject, I note that Jackson claimed that he abruptly "cut it off" because he "didn't want Jenny to find out . . . ." *See* majority op. at 208.

During Jackson's testimony, his counsel specifically directed him to the issue of how his sexual relationship with Kelly H. related to the defense theory that Kelly H. had fabricated the sexual assault (and the other charges). Here, Jackson explained that Kelly H. was mad at him because he was moving out, thus leaving her responsible for additional rent, and that he owed Kelly H. money for the telephone. Defense coun-

impeached Jackson's credibility did not contribute to the conviction because such evidence did not make Kelly H. any more credible. *See State v. Dyess*, 124 Wis. 2d 525, 543, 370 N.W.2d 222, 231 (1985).

sel then asked Jackson what I perceive to be the crucial question of whether there were other reasons why Kelly H. might harbor bad feelings towards him which, in turn, would motivate her to fabricate these charges. Defense counsel specifically inquired:

> Q.   When the fight happened on December the 1st of 1994, what did you perceive the reasons to be for the fight, aside from the money?
>
> A.   *That was it.* [Emphasis added.]

But despite this narrow record, defense counsel argued to the trial court that the evidence concerning Jackson and Kelly H.'s prior sexual relationship was relevant because it "certainly would add to the anger that she was experiencing at that point in time."

The trial court rejected this argument. In light of Jackson's defense—that the assault never happened—the trial court ruled that this prior sexual relationship was not relevant. The court explained that:

> There is no evidence of prior unfruitful allegation of sexual assault by this complaining witness. All you want to do is bring in the fact, the alleged fact, that they had sex. Maybe they changed the oil in the car together. It's interesting, but it's not material to the fact that he said it didn't happen, they had a scuffle relating to an argument over money.

I wholeheartedly join in this analysis and join the majority's decision insofar as it upholds this ruling. *See* majority op. at 211.

However, I depart from the majority's opinion at the point where it goes on to conclude that the trial court was bound to reverse this ruling when the prosecutor asked Jackson, at trial, if his financial

disagreement with Kelly H. was the reason why Kelly H. was allegedly biased against him. The majority suggests that the prosecutor "opened the door" to the issue of Kelly H.'s credibility and therefore was trying to exploit the fact that Kelly H.'s prior sexual conduct (which supposedly would bear on her credibility) had been declared inadmissible under the rape shield statute. The majority effectively holds that to preserve Jackson's constitutional right to present a defense, the trial court should have set aside the rape shield law and allowed Jackson to tell the jury that he and Kelly H. had been sexually involved.

But when the prosecutor asked Jackson this question, he was not trying to take advantage of the fact that the evidence relating to his witness's prior sexual conduct had been declared off limits. During pretrial proceedings, Jackson was the one who claimed that his financial disagreement with Kelly H. was the source, *and the only source*, of Kelly H.'s alleged bias.

Moreover, during trial Jackson continued with his theory that the financial problems were at the root of his conflict with Kelly H. During direct examination, Jackson explained that she was constantly asking him "when are you going to help pay the rent and when [are] you going to help pay the phone bill . . . ." Indeed, Jackson testified that during the November before the assault, Kelly H. had become so concerned about the financial arrangements at the apartment that she took out the phones from the apartment's common areas (apparently the phone line was in her name) and put a block on the line so that only she could use it. According to Jackson, Kelly H. had even threatened to disclose to the landlord that Jackson was living at the apartment, which would have raised the rent. Jackson alleged that he, Jennifer and Kelly H. "had made an agreement that

my name not be on the lease, so we wouldn't have to pay the extra $ 100." Finally, Jackson explained that on the day of the alleged assault, Kelly H. started "verbally whipping" him about how he had to get out of the apartment and how he was going to pay what he owed. This argument led to a brief pushing match.

Faced with the testimony that Jackson gave during the pretrial evidentiary hearing and on direct examination at trial, the prosecutor asked Jackson on cross-examination if "the fact that she had some disagreement over finances with you in the home" was the reason why she was falsely accusing him. But Jackson, instead of just confirming his earlier testimony, tried to supplement the record by claiming that "it was more to it than it."

Although the record shows how the trial court interrupted the proceedings at this stage to determine if Jackson could make an offer of proof to support his new position—Jackson could not—the majority holds that the trial court erred. The majority reasons that the prosecutor "opened the door" to the overall issue of Kelly H.'s credibility by asking this question and thus, regardless of the rape shield law, the trial court was constitutionally bound to permit Jackson to tell the jury that he and Kelly H. had a prior sexual relationship. I disagree with the majority's analysis for two reasons.

First, after reviewing the record, I am convinced that the prosecutor did not "open the door." When one party attempts to exploit evidence which has been declared out of bounds, the doctrine of curative admissibility permits a trial court to cure the error by having the other party respond with its own version of the inadmissible evidence. *See* Edward J. Imwinkelried, *Judicial Remedies for the Exposure of the Jury to "Irrel-*

223

*evant" Evidence*, 34 HOUS. L. REV. 73, 86–87 (1997); Dale A. Nance, *A Theory of Verbal Completeness*, 80 IOWA L. REV. 825, 869 (1995). Although very few Wisconsin cases address this principle in detail, the existing case law suggests that the doctrine is premised on a basic notion of "fair play." *See State v. Coogan*, 154 Wis. 2d 387, 399–400, 453 N.W.2d 186, 190 (Ct. App. 1990) (quoting *Karl v. Employers Ins.*, 78 Wis. 2d 284, 300, 254 N.W.2d 255, 262 (1977)).

This case in no way comes within the definition of the "curative admissibility" doctrine. The prosecutor did nothing unfair when he asked Jackson about their financial disagreement. Jackson was the one who originally stated for the record that this was the *only* reason why he fought with Kelly H. on the day of the assault. Moreover, by claiming that Kelly H. had completely fabricated her sexual assault claim, Jackson was the one who "opened the door" to the general issue of why Kelly H. might be motivated to falsely accuse him. In fact, it seems to me that the trial court was carefully attuned to how Jackson's theory of the case related to the evidence concerning Kelly H.'s prior sexual conduct as it interrupted the proceedings and gave Jackson another opportunity to show that, contrary to his earlier testimony, Kelly H. was *also* biased against him because Jackson had abruptly broken off their sexual relationship.

Turning next to the constitutional analysis, and assuming that the prosecutor's question on cross-examination somehow "opened the door" to Kelly H.'s credibility, I do not understand how the trial court was not still bound to apply the rape shield law. I understand that the supreme court recognized in *State v. Pulizzano*, 155 Wis. 2d 633, 456 N.W.2d 325 (1990), that the rape shield law may sometimes have to give

way to the defendant's right to present evidence. *See id.* at 656–57, 456 N.W.2d at 335; *accord Michael R.B. v. State,* 175 Wis. 2d 713, 736, 499 N.W.2d 641, 651 (1993). But before a trial court casts aside a witness's rape shield protection, the defendant must make an offer of proof showing (among other things) that the evidence is "clearly relevant to a material issue." *See Pulizzano,* 155 Wis. 2d at 656, 456 N.W.2d at 335.

However, as the record certainly demonstrates, Jackson was unable to make this showing when he was given a new opportunity to do so. Jackson had testified that he had abruptly broken off his sexual relationship with Kelly H., but he never provided any indication that she cared. As the State explained in its brief:

> Defendant never testified that the prior sexual relationship caused the victim to become embittered or jealous so as to provide her with a motive for fabricating charges of sexual assault, kidnapping and other crimes.

The trial court understood that if Jackson had shown that Kelly H. was upset with him for breaking off the sexual relationship, then their past sexual relationship would have been relevant. Jackson was simply unable to make that offer of proof, both before trial or during the midtrial interruption. Hence, the trial court correctly declined to admit this evidence. Regardless of whether the prosecutor "opened the door" to the general issue of Kelly H.'s credibility, Jackson's constitutional right to present a defense was preserved because Jackson never showed how his prior relationship with Kelly H. was relevant to the case.